582 A.2d 41

In re: Condemnation By the Commonwealth of Pennsylvania, Department of Transportation, of Right of Way for Legislative Route 1126, Section C05, a Limited Access Highway, in the Township of Greenfield.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, Appellant

v.

GREENFIELD TOWNSHIP—PROPERTY OWNERS: Dan F. and Arlene DeMarco, his wife, Appellees.

Commonwealth Court of Pennsylvania.

Argued Feb. 6, 1990.

Decided Sept. 7, 1990.

Reargument Denied Nov. 8, 1990.

114

Jeffrey L. Giltenboth, Sr. Asst. Counsel, with him, William J. Cressler, Asst. Chief Counsel, and John L. Heaton, Chief Counsel, for appellant.

James F. Geronimo, with him, Edward Orton, Orton & Jeffery, P.C., North East, for appellees.

Before CRUMLISH, Jr., President Judge, and PELLEGRINI,J., and SILVESTRI, Senior Judge.

PELLEGRINI, Judge.

The Commonwealth of Pennsylvania, Department of Transportation (PennDot) appeals from an Order of the Court of Common Pleas, Erie County, which ordered Penn-Dot to pay damages to Dan F. and Arlene DeMarco (DeMarcos) for the *de facto* taking of 68.77 acres of their property.

The DeMarcos were the owners of approximately 100 acres in Greenfield Township, Erie County. On September 18, 1985, PennDot filed a declaration of taking which condemned 15.08 acres of the DeMarcos' land for the construction of the Southern Tier Expressway (Expressway). The DeMarcos never filed preliminary objections to the declaration of taking. PennDot paid the DeMarcos $16,300 for the condemned property and took possession on May 5, 1986. The condemnation bisected the remaining DeMarcos' property into two parcels, one containing 16.86 acres north of the Expressway and the other containing 68.77 acres south of the Expressway. As a result of the condemnation, the DeMarcos were denied all access to the southern portion of their property.

PennDot attempted to cure this lack of access by condemning a portion of property, referred to as "Parcel 21," owned by an adjacent landowner and deeding that property over to the DeMarcos to provide them them with a right-of-way to the southern portion of their property. The DeMarcos found this solution failed to give them access because Parcel 21 was a gully with a ravine running through the land and was impassable by car. Thereafter, on December 17, 1986, the DeMarcos petitioned for the Appointment of a Board of Viewers (Board) alleging a *de facto* taking of the southern 68.77 acres of their property as a result of that property being landlocked. A viewing was held and the

Board found that the southern 68.77 acres were not land-locked because there was access to that property via Parcel 21. Consequently, the Board determined that a *de facto* taking had not occurred. The Board assessed the DeMar-cos' damages at $26,000, less $16,300 which had previously been paid to the DeMarcos, plus interest.

The DeMarcos appealed the Board's findings to the Court of Common Pleas in Erie County. The trial court deter-mined that the southern portion of the DeMarcos' property was landlocked because Parcel 21 did not provide any access to the DeMarcos' property, and, therefore, a *de facto* taking of that property had occurred.[1] The trial court also determined that the DeMarcos were entitled to damages for the effects of PennDot landlocking the southern portion of the property, separate and above from the damages award-ed by the Board which were to be determined by a jury. The trial court further found that consequential damages were inappropriate because there had been a *de facto* taking. PennDot then appealed the trial court's decision to this court, alleging that a *de facto* taking had not occurred, and that the DeMarcos were not entitled to the damages they were awarded.

The issues now before us are whether the DeMarcos are precluded from alleging a *de facto* taking because they did not file preliminary objections to the declaration of taking, and whether the trial court erred by determining that there was a *de facto* taking of the southern 68.77 acres and finding that the DeMarcos were entitled to both damages awarded from the Board plus additional damages to be awarded by a jury.

■ PennDot contends that the DeMarcos are now pre-cluded from alleging a *de facto* taking of their property because they never filed preliminary objections to Penn-

---

1. Mr. DeMarco testified that Parcel 21 was like a gully with a stream running through the parcel. (T. 50–51). He also stated that Parcel 21 was not passable by car, truck or farm tractor. (T. 51). Upon viewing the property, the trial judge concurred with Mr. DeMarco that Parcel 21 did not provide the DeMarcos with access to and from their property.

Dot's declaration of taking.[2] They rely on the case of *Nelis v. Redevelopment Authority of Allegheny County*, 12 Pa. Commonwealth Ct. 338, 315 A.2d 893 (1974), for the proposition that when a formal declaration of taking has already been filed, the declaration of taking precludes the applicability of the petition alleging a *de facto* taking when preliminary objections have not been raised.

However, in *City of Pittsburgh v. Gold*, 37 Pa.Commonwealth Ct. 438, 390 A.2d 1373 (1978), this court held that a landowner who had suffered damages to his property as the result of a condemnation proceeding but who had not filed preliminary objections to the declaration of taking, was not precluded from alleging a *de facto* taking because the landowner learned of the damage to his property two years after the declaration of taking was filed. Similarly, in this case, the DeMarcos did not file preliminary objections at the time the declaration of taking was filed because they were unaware that their property had been landlocked. The DeMarcos were reassured by PennDot that a right-of-way to their property would be provided when Parcel 21 was deeded over to them. The trial court found that the DeMarcos' 30–day appeal period was not tolled at the time Parcel 21 was condemned because the DeMarcos were not parties to the proceeding condemning Parcel 21. Therefore, based on the holding in *Gold*, we find that the DeMarcos' failure to file preliminary objections in order to preserve their right to allege a *de facto* taking was not fatal to their case.

■ PennDot admits that they are liable to the DeMarcos for consequential damages, but contend that the trial court erred in finding a *de facto* taking because PennDot had no need for all of the DeMarcos' land never entered and if

---

**2.** Section 406(a) of the Eminent Domain Code (Code), Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* 26 P.S. § 1–406(a) provides: Within thirty days after being served with notice of condemnation, the condemnee may file preliminary objections to the declaration of taking. The court upon cause shown may extend the time for filing preliminary objections. Preliminary objections shall be limited to and shall be the exclusive method of challenging.... (4) the declaration of taking. Failure to raise these matters by preliminary objections shall constitute a waiver thereof.

PennDot diminished the value of the land, the DeMarcos would be entitled to receive consequential damages pursuant to Section 612 of the Code.[3] In order to establish whether consequential damages are more appropriate than condemnation damages for a *de facto* taking, PennDot's actions must be examined to see whether they only affected the property or whether they substantially deprived the DeMarcos of the use and enjoyment of their property, and the deprivation was the direct and necessary consequence of PennDot's actions. *McGaffic v. Redevelopment Authority of the City of New Castle,* 120 Pa.Commonwealth Ct. 199, 548 A.2d 653 (1988).

 Contrary to PennDot's assertion, neither physical appropriation nor a formal divestiture of an owner's title are required to create a right to file a *de facto* taking. The law is well settled that when an entity clothed with the power of eminent domain has, by even a non-appropriative act, substantially deprived an owner of the beneficial use and enjoyment of his property, a *de facto* taking will be deemed to have occurred. *Petition of Borough of Boyerton,* 77 Pa.Commonwealth Ct. 357, 466 A.2d 239 (1983). Consequential damages only apply to property affected by a *de jure* or *de facto* taking or an activity by which a condemnor changes a grade of road or highway, permanently interferes with access to property, or causes injury to surface support.

 In this case, the trial court properly determined that the DeMarcos had established a *de facto* taking because PennDot had deprived the DeMarcos of the beneficial use and enjoyment of their land because the property was landlocked, and the deprivation was a direct consequence of the taking of their 15.08 acres for the construction of the Expressway. Although PennDot was not in possession of

3. Section 612 of the Code, 26 P.S. § 1–612, provides that all condemnors, including the Commonwealth of Pennsylvania, shall be liable for damages to property abutting the area of improvement, resulting from change of grade of a road or highway, permanent interference with access thereto, or injury to surface support, whether or not any property is taken.

the 68.77 acres and did not have title to that property, we find that because they substantially deprived the DeMarcos of the use and enjoyment of their property, there was a *de facto* taking of the DeMarcos' southern 68.77 acres, and the DeMarcos were entitled to condemnation damages as a result of that taking.

The DeMarcos contend that PennDot is precluded from raising the issue of whether the amount of money awarded by the Board was proper because PennDot did not file post-trial motions to preserve the issue for appeal to this court. While it is true that a litigant must make a timely objection at trial and must raise an issue on post-trial motions to preserve the issue for appeal to this court[4], that argument is inapplicable because the trial court never entered a final order and judgment from which exceptions had to be taken. The trial court only determined that a *de facto* taking had occurred and left the amount of damages to be awarded for a jury to determine. To date, a jury has not heard this case to determine damages.

PennDot argues, and we agree, that the trial court erred in determining that the DeMarcos were entitled to damages for the effects of their southern 68.77 acres being landlocked in addition to damages awarded by the Board. An appeal in an eminant domain case is considered a trial de novo, and neither the Board's report nor any of their findings, including the amount of the award, are admitted for the appeal. *Kellman Trust Fund v. Commonwealth, Department of Transportation*, 24 Pa.Commonwealth Ct. 102, 354 A.2d 583 (1976). In any proceeding to determine damages for a *de facto* taking, an aggrieved landowner is only entitled to receive damages which equal the difference between the fair market value of their property before the taking and the fair market value after the taking.[5]

4. See *In re Appeal of Pyle*, 70 Commonwealth Ct. 642, 453 A.2d 744 (1982).

5. Section 602(a) of the Code, P.S. § 1–602(a) provides that just compensation shall consist of the difference between the fair market value

Accordingly, for the reasons stated in this opinion, we affirm the trial court's decision determining that there was a *de facto* taking of the southern 68.77 acres and reverse its decision granting the DeMarcos additional damages for the effects of their property being landlocked, separate from and above the damages awarded by the Board.

## ORDER

AND NOW, this 7th day of September, 1990, the Order of the Court of Common Pleas, Erie County, No. 3360–A–1985, dated March 21, 1989, finding a *de facto* taking is affirmed, and the order of payment of damages of $26,000, less partial payment of $16,300 plus interest and additional damages for the landlocking of the southern 68.77 acres, is reversed.

SILVESTRI, Senior Judge, dissenting:

I dissent from the majority's affirming the trial court's order of May 21, 1989 finding there was a de facto taking. I agree with the majority that the trial court's order providing for additional damages be reversed.

On September 18, 1985, the Commonwealth of Pennsylvania, Department of Transportation (DOT), pursuant to the provisions of Article IV Section 402 of the Eminent Domain Code [1] (Code) filed a declaration of taking, in fee simple, taking, *inter alia,* a portion of the real property of Dan F. DeMarco and Arlene DeMarco (DeMarco) located in North East, Erie County, Greenfield Township, PA, as set forth in the plot plan recorded in Right of Way Book 16, page 16, for transportation purposes.

DOT obtained possession of the condemned property on May 19, 1986.

of the condemnee's entire property interest immediately before the condemnation and as unaffected thereby and the fair market value of his property interest remaining immediately after such condemnation and as affected thereby, and such other damages as are provided in this code.

1. Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* 26 P.S. § 1–402.

On December 18, 1986, DeMarcos filed a petition for appointment of viewers [2] in which it is alleged that they are fee simple owners of the condemned property; that they filed no preliminary objections to the declaration of taking; that their real estate consists of 103.47 acres "of farmland located off from Route 89...." The DeMarcos then state in paragraph 5 of their petition, as follows:

5. Petitioners are also filing this Petition pursuant to § 502(e) of the Eminent Domain Code, adding both the Commonwealth of Pennsylvania, Department of Transportation and Greenfield Township as Condemnors for the DE FACTO taking in removing the access to the property over old Route 89.

A hearing was conducted before the appointed viewers beginning April 3, 1987. At the commencement thereof, Mr. Orton, counsel for the DeMarcos, made the following statement:

MR. ORTON: I'd like to make one statement before we proceed. We have somewhat of an unusual situation in this particular case, in that our Petition for the Appointment of a Board of Viewers alleges a de facto taking by the state, in this case. We have not only the map, which is stipulated to, as property taken, but it is also the contention of the property owner that the action of the Commonwealth of Pennsylvania in constructing an access roadway from new eighty-nine to two parcels of land east of old eighty-nine constituted a de facto taking of the access afforded to the property owner, over old Route 89. (R.R.152a)

The DeMarco property is a rectangular piece of land which runs, generally, north and south. It is farm and timber land with no structures thereon. Prior to the declaration of taking, access to and from the property was by way of a 1500 foot long, 50 foot wide private lane, which ran east and west. The eastern terminus was at the northwestern corner of the DeMarco property and the west-

2. The order appointing viewers is dated December 17, 1986.

ern terminus was the easterly side of old route 89 (identified as old L.R.304 on the Viewers Plan). See Figure 1.

FIGURE 1
BEFORE DECLARATION OF TAKING
(Not to Scale)

The declaration of taking took a fee for the Southern Tier Expressway (Expressway) diagonally across the northern part of the DeMarco property. The southerly line of Expressway cut across the 1500 foot by 50 foot private lane, near the northwesterly corner of the DeMarco property so as to sever the eastern terminus of said private lane pre-

venting access to or from the DeMarco property. (Viewers Plan.) See Figure 2.

FIGURE 2
AFTER DECLARATION OF TAKING
(Not to Scale)

The testimony, with the exception of value, at the viewers' hearing, was directed to whether or not access by DeMarco from new route 89 to old route 89 and vice versa was interfered with by either DOT or the Township or both, as to constitute a de facto taking of the DeMarco property.

There was also testimony at the viewers' hearing that DOT and the Township provided access from new route 89 to old route 89, thus providing DeMarco entrance onto the western terminus of the 1500 foot by 50 foot private lane.

DOT also presented testimony that since the eastern terminus of the 1500 foot by 50 foot private lane had been severed, denying access to the DeMarco property south of the Expressway, that it, by a declaration of taking for a private driveway, took a portion of the Buscene property which adjoins the westerly side of the DeMarco property. This portion is referred to in the record and exhibits as "Parcel 21."

The portion of the Buscene farm taken, Parcel 21, abuts the 1500 foot by 50 foot private land at one end and the westerly side of the DeMarco property at the other end, thus giving access to and from the DeMarco property to the 1500 foot by 50 foot private lane and from there to old route 89 and then to new route 89.[3] See Figure 3 and Appendix B. [See page 126 for Figure 3.]

3. At the time of the viewers' hearing, DOT had not conveyed Parcel 21, the portion taken of the Buscene farm, to the DeMarcos.

FIGURE 3
AFTER TAKING PARCEL 21 BY
DECLARATION OF TAKING OF BUSCENE PROPERTY.
PARCEL 21 TO BE TRANSFERRED BY DOT TO DeMARCO.
(Not to Scale)

The Viewers found there was no de facto taking. They also found there was access to the 68.772 acres of the DeMarco property south of and abutting the Expressway by going over the "private right of way" the Commonwealth took from Buscene by way of a declaration of taking.

On June 2, 1987, DeMarcos filed an appeal from the Viewers' final report. DeMarco appealed the award of $26,000.00 in damages, and objected to the viewers' findings, (1) that there was no de facto taking; (2) that the southerly acreage (71.53 acres) was not landlocked in that there was access thereto. A jury trial was demanded.

Hearing on DeMarcos' appeal from the viewers' report was held before the trial court commencing on June 30, 1988. The parties agreed that the testimony taken before viewers was to be part of the record. Additional testimony was taken and the trial court viewed the property.

The trial court found, and the record supports, that there was no de facto taking of the access to the property over old route 89 by either DOT or the Township by the work done in and about the area of old route 89 and new route 89.

The trial court next addressed Parcel 21 and found that it provided no access to the DeMarco property, thus depriving them of the beneficial use and enjoyment of their 68.772 acres south of the Expressway. In support thereof the trial court found from the testimony and its view of Parcel 21 that it was "like a gully" with a stream running through it with a five foot culvert and was not passable by car, truck or farm tractor. Further, that Parcel 21 was substantially lower than the 1500 foot by 50 foot private lane owned by the DeMarcos; that the area appeared as a general slope, down to a creek, and up at a sharp angle; and, there were boulders and a drain pipe in the gully; so that the effect of the grade differential is to deny access to a portion of the DeMarco property.

From the foregoing findings by the trial court, it concluded there was a de facto taking in that the landlocking of 68.772 acres of the DeMarco property south of the Expressway was a de facto taking as of September 18, 1985.[4]

The trial court entered an order on March 21, 1989, as summarized, that the DeMarcos' "68.772 acres was taken *de facto* by the Commonwealth as of September 18, 1985;" "[t]here is *not* access to appellants' 68.772 acres south of and abutting" the Expressway by way of crossing the "Parcel 21" right of way taken in the Buscene condemna-

---

4. The trial court in its opinion, but not in the order of March 21, 1989, determined that the DeMarcos were not entitled to consequential damages pursuant to § 612 of the Code. DeMarco never raised § 612 damages before the Viewers or in their appeal to to the trial court.

tion; that the DeMarcos are entitled to additional damages based on the foregoing. (Emphasis in the original.)

DOT, on April 14, 1989, filed an appeal to this court from the trial court's order of March 21, 1989.

The DeMarcos did not file an appeal from the trial court's determination that there was not a de facto taking of DeMarcos' access to their property by DOT or the Township over old route 89 by reason of construction which occurred in and about new route 89 and old route 89.

DOT filed an appeal from the court's order that there was a de facto taking as of September 18, 1989 by landlocking 68.772 acres of the DeMarco property; and from the trial court ordering that additional damages were owing to the DeMarcos above the $26,000.00 awarded by the viewers.

As established by the declaration of taking filed September 18, 1985 and the Viewers' Plan, Exhibit 2 in evidence, attached as Appendix A, and as demonstrated in Figure 2, supra, 16.860 acres of the DeMarco property north of the Expressway was landlocked regardless of the access theretofore provided by DeMarcos' 1500' × 50' private lane; additionally by severing the 1500' × 50' private lane at its eastern terminus with the DeMarco property, also landlocked the 68.772 acres of the DeMarco property south of the Expressway.

It admits of no argument that as of September 18, 1985 the remaining property of the DeMarcos north and south of the Expressway was landlocked and it became so as a result of the filed declaration of taking.

The concept of a de facto taking is recognized by the legislature through Section 502(e) of the Eminent Domain Code, which provides in part: "If there has been a compensable injury suffered and no declaration of taking therefor has been filed, a condemnee may file a petition for the appointment of viewers...." Such a taking occurs "when the entity clothed with the power of eminent domain substantially deprives an owner of the beneficial use and enjoyment of his property." *Griggs v. Allegheny County*, 402

Pa. 411, 414, 168 A.2d 123, 124 (1961), *rev'd,* 369 U.S. 84, 82 S.Ct. 531, 7 L.Ed.2d 585 (1962); *Monaco v. Department of Transportation,* 26 Pa.Commonwealth Ct. 387, 363 A.2d 857 (1976); *Berman v. Urban Redevelopment Authority of Pittsburgh,* 15 Pa.Commonwealth Ct. 1, 324 A.2d 811 (1974).

Whether a de facto taking has occurred entitling a property owner to relief depends upon whether the facts in the particular case demonstrate that action by a condemning entity resulted in such an injury to property as to substantially deprive the owner of the beneficial use and enjoyment thereof. *Beckman v. Redevelopment Authority of City of McKeesport,* 30 Pa.Commonwealth Ct. 576, 374 A.2d 985 (1977); *Elias v. Department of Transportation,* 25 Pa. Commonwealth Ct. 605, 362 A.2d 459 (1976). Burden is on the property owner claiming a de facto taking to show exceptional circumstances which substantially deprive owner of use of property and that deprivation is a direct and necessary consequence of actions of entity clothed with power of eminent domain. *McGaffic v. Redevelopment Authority of City of New Castle,* 120 Pa.Commonwealth Ct. 199, 548 A.2d 653 (1988).

It is beyond question that the DeMarcos suffered a compensable injury to their property by having the portions north and south of the Expressway landlocked.

As of September 18, 1985, the date the trial court fixes as the date of the de facto taking, the record is devoid of DOT, except for filing the declaration of taking, having engaged in any conduct which substantially deprived the DeMarcos of the beneficial use and enjoyment of their property. This conclusion is reinforced by the fact that DOT did not take possession of the condemned property until May 19, 1986.

DOT knew of the landlocking north and south of the Expressway at the time of filing the declaration of taking and from the Viewers Plan. The records, both the viewers' hearing and before the trial court, are devoid of any evidence that DOT attempted to alleviate the landlocking of the 16.860 acres north of the Expressway.

As to the landlocking of the 68.772 acres south of the Expressway, DOT did attempt to provide access thereto by condemning "Parcel 21" of the Buscene property which abutted the 1500′ by 50′ private lane where the Expressway had severed said private lane at one end, and the western boundary line of DeMarco near the northwest corner at the other end; Parcel 21 was 50′ wide and approximately 200′ in length.[5]

Accepting as true that the condition and topography of Parcel 21 was as found by the trial court in its opinion,[6] it was not Parcel 21 which created the landlock. The landlock was created upon filing of the declaration of taking on September 18, 1985. The acquiring of Parcel 21 by DOT for transfer to DeMarco, which has not occurred, was to provide access and not to deny access to the DeMarco property. Where a landlock is created by a filed declaration of taking as here, the taking does not become de facto because the proposed remedy to unlock the land either fails or is inadequate.

I would reverse the finding of the trial court that there was a de facto taking of the 68.772 acres of the DeMarco

5. The location and dimensions are from the Viewers' Plan (Exhibit 2) (Appendix A). See also Figure 3.

6. R.R. 17a and 18a of the trial court's opinion are as follows:
 Testimony revealed that Parcel 21 was virtually useless as a right-of-way connector between the lane and the balance of the DeMarcos' property. Mr. DeMarco testified before this court that the topography of Parcel 21 was "like a gully" (T. 50–51). It had a stream running through it with a five-foot culvert (T. 51). He also testified that it was not passable by car, truck or farm tractor (T. 51). This was supported by the court's view of the parcel. The court observed that the replacement parcel was substantially lower than the right-of-way lane owned by appellants (T. 97–98). The area appeared as a general slope, down to a creek, and up at a sharp angle. There were boulders and a drain pipe in the gully (T. 98). No evidence was produced to contradict a finding that access was not available across Parcel 21. The Commonwealth condemned Parcel 21 for the specific purpose of connecting the DeMarcos' 68.772 acres to the right-of-way lane and out onto Route 89 in order to create an access route to a public highway. Unfortunately, the fact is that the grade of the parcel is substantially lower than the DeMarcos' lane and their 68.772 acres. The effect of the grade differential is to deny access to a portion of the property.

property south of the Expressway; and, since I agree with the majority that the damages to which DeMarcos are entitled is as set forth in § 602(a) of the Code, I would direct the trial court to submit the matter to a jury as requested by the DeMarcos for a determination of damages resulting from the declaration of taking filed September 18, 1985 pursuant to Section 602(a) [7] and Section 705(2)(v) of the Code.[8]

7. § 1–602 Measure of damages

(a) Just compensation shall consist of the difference between the fair market value of the condemnee's entire property interest immediately before the condemnation and as unaffected thereby and the fair market value of his property interest remaining immediately after such condemnation and as affected thereby, *and such other damages as are provided in this code.* (Our emphasis.)

8. Section 705(2)(v) provides as follows:

Whether at the hearing before the viewers, or at the trial in court on appeal:

. . . . .

(2) A qualified valuation expert may testify on direct or cross-examination in detail as to the valuation of the property on a comparable market value, reproduction cost or capitalization basis, which testimony may include but shall not be limited to the following:

. . . . .

(v) The cost of adjustments and alterations to any remaining property made necessary or reasonably required by the condemnation.