613 A.2d 96

**In re Matter of Condemnation of Premises of D.R.E. Land Developing, Inc., Area of Land Between Railroad Avenue, Middle Street, Chestnut Street, Oak Street, Frackville, by Borough of Frackville.**

**Appeal of D.R.E. LAND DEVELOPING, INC., Appellant.**

Commonwealth Court of Pennsylvania.

Argued Dec. 17, 1991.

Decided July 20, 1992.

William R. Mosolino, for appellant.

Joseph P. Troy, for appellees.

Before SMITH and PELLEGRINI, JJ., and LEDERER, Senior Judge.

SMITH, Judge.

D.R.E. Land Developing, Inc. (D.R.E.) appeals from the May 13, 1991 order of the Court of Common Pleas of Schuylkill County sustaining the preliminary objections of the Borough of Frackville (Borough) to D.R.E.'s petition for appointment of viewers filed pursuant to Section 502(e) of the Eminent Domain Code, Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* 26 P.S. § 1–502(e).[1] The issues raised on appeal are whether a de facto taking of D.R.E.'s land occurred when the Borough removed a crushed underground drainage pipe, located in D.R.E.'s land but maintained by the Borough for over forty-three years, and installed a new pipe to alleviate flooding on the adjacent property; whether the Borough acquired a storm water drainage easement over D.R.E.'s land; and whether the trial court's findings are supported by substantial evidence.

In 1985, D.R.E. purchased nine contiguous parcels of land located in the Borough, Schuylkill County, which had formerly been used by the Reading Company for railroad tracks and a right-of-way until its termination of the use in the 1970's. The 1.326 acre parcel in question, "Lot No. 5," is rectangular in shape and extends from Oak Street on the north to Chestnut Street on the south. It abuts Railroad Avenue on the east and Middle Street on the west. Railroad Avenue and Lot No. 5 slope downward from north to south. Prior to D.R.E.'s purchase of Lot No. 5, the Reading Company maintained an approximately two to four feet wide and one to two feet deep drainage ditch along the eastern portion of Lot No. 5 between the track bed and Railroad Avenue. To prevent the track bed from being flooded by storm water, the Reading Company

1. Due to Judge Barbieri's retirement, this case was reassigned to the author of this opinion on April 28, 1992.

employees regularly removed debris from the ditch until its abandonment of the railroad track. On the eastern boundary of Lot No. 5 at the end of Railroad Avenue, there is a two-foot by four-foot catch basin which collects storm water naturally flowing from Oak Street southerly along Railroad Avenue. The storm water accumulated in the catch basin flowed westerly through a ten-inch underground metal pipe into the ditch and then flowed southerly toward Chestnut Street. The Borough maintained the catch basin and the discharge pipe for over forty-three years.

After D.R.E. purchased the land, it removed railroad ties, scraped away a six-inch railroad bed, and placed a berm of dirt along Railroad Avenue to guide the flow of storm water and prevent runoff of cinders from Lot No. 5 onto the street. Thereafter, the Borough received numerous complaints of flooding of property adjacent to the catch basin. In response, Borough employees inspected the catch basin area and discovered that the discharge end of the drainage pipe was covered by the dirt berm D.R.E. placed along Railroad Avenue which created a two to three feet deep dam around the catch basin. They exposed a portion of the discharge pipe and replaced the crushed portion of the pipe with a six-inch PVC pipe into the catch basin drainage connecting to the remaining drainage pipe. The outlet of the newly installed drainage pipe was about three feet away from the place where the old pipe discharged storm water into the ditch. This remedial measure cured the flooding problems in the area.

On December 8, 1989, D.R.E. filed a petition for appointment of viewers alleging a de facto taking of its land because the Borough removed a berm and replaced a pipe, directing a large quantity of drainage water in a westerly direction onto D.R.E.'s land. The petition asserted that the Borough condemned an easement for the flow and accumulation of storm water over its land. The trial court after hearings sustained the Borough's preliminary objections and dismissed D.R.E.'s petition, concluding that no de facto taking occurred because replacement of the crushed drainage pipe did not substantially deprive D.R.E. of the beneficial use and enjoyment of its

property; that D.R.E.'s own actions in placing a pile of dirt around the ditch and the catch basin area and removing bushes, grass and trees from the area where the ditch was located caused the flooding of D.R.E.'s land; and that the Borough's replacement of the pipe was consistent with its storm water drainage easement.

This court's scope of review in an eminent domain case is limited to determining whether the trial court abused its discretion or committed an error of law. *Rawlings Appeal*, 147 Pa.Commonwealth Ct. 612, 608 A.2d 1109 (1992). A de facto taking occurs when an entity, clothed with the power of eminent domain, exercises that power causing damages to the property owner which are the immediate, necessary and un-avoidable consequences of that exercise. *Harborcreek Township v. Ring*, 48 Pa.Commonwealth Ct. 542, 410 A.2d 917 (1980). To find a de facto taking, there must be exceptional circumstances which have substantially deprived the property owner of the use and enjoyment of his or her property. *Jacobs Appeal*, 55 Pa. Commonwealth Ct. 142, 423 A.2d 442 (1980), *appeal dismissed*, 499 Pa. 337, 453 A.2d 336 (1982). Hence, in determining whether a de facto taking occurred, each case must be examined on its own factual situation. *McGaffic v. Redevelopment Authority of City of New Castle*, 120 Pa. Commonwealth Ct. 199, 548 A.2d 653 (1988), *appeal denied*, 523 Pa. 644, 645, 565 A.2d 1168, 1169 (1989).

Based upon the testimony of its witnesses that the old pipe was ten inches in diameter and located at a forty-five degree angle from which the water flowed into the ditch and that by comparison, the new pipe is six inches in diameter and installed at a ninety degree angle, D.R.E. argues that the flooding of its land was caused by the different size and location of the drainage pipe which changed the direction, volume and velocity of storm water flowing onto its land. Review of the record demonstrates, however, that D.R.E. failed to establish that the Borough's installation of a new pipe constituted a substantial deprivation of the use and enjoyment of its property.

Similar facts were presented in *Florek v. Department of Transportation,* 89 Pa.Commonwealth Ct. 483, 493 A.2d 133 (1985). In *Florek,* the Department maintained a drainage system including an underground terra cotta pipe extending from a catch basin on the highway across the appellant's property. The appellants, in an effort to prevent the discharge of sewage and water onto their property, performed backfilling operations and in doing so, covered and crushed the terra cotta pipe causing drainage problems on the highway and their property. To cure this problem, the Department installed a new drainage pipe in the same location but at a different elevation in the ground. This Court affirmed the trial court's denial of the appellants' claim that a de facto taking occurred because the Department's action caused storm water to drain onto their property. This court stated:

> We cannot say that a de facto taking occurred when DOT installed a new drainage pipe on Appellants' property. We agree with the trial court that Appellants failed to meet their burden of proving that a drain pipe which was installed at a depth of five feet, instead of fourteen to fifteen feet, constitutes a substantial deprivation of the use and enjoyment of their property. The facts reveal that DOT would not have had to install a new pipe if Appellants had not crushed the original pipe with their bulldozer during the backfill operation. Any damage to Appellants' property, therefore, was not the immediate, direct, necessary or unavoidable consequence of DOT's installation of the new pipe.

*Id.* at 488, 493 A.2d at 136.

Similarly, in the matter sub judice, it is undisputed that replacement of the drainage pipe would not have been necessary if the pile of dirt placed by D.R.E. around the catch basin and the crushed old metal pipe had not blocked the flow of storm water from the catch basin into the drainage ditch. Thus, the record fails to show that any asserted damages to D.R.E.'s property were caused by the Borough's installation of the new pipe. Rather, the evidence shows, and the trial court found, that "the action of D.R.E. in removing bushes, grass and trees from the area of the ditch resulted in water flowing

generally across Lot No. 5 to the [w]est rather than being channeled ... to flow southwardly [sic] toward Chestnut Street." Trial Court Opinion, p. 4. Therefore, D.R.E. failed to establish a de facto taking of its land by the Borough.[2] Accordingly, the trial court's order sustaining the Borough's preliminary objections is affirmed.

This matter was argued before a panel consisting of Judge Smith, Judge Pellegrini and Senior Judge Barbieri. Because of the conclusion of Senior Judge Barbieri's service, the case was submitted on briefs to Senior Judge Lederer for his consideration as a member of the panel.

## ORDER

AND NOW, this 20th day of July, 1992, the order of the Court of Common Pleas of Schuylkill County dated May 13, 1991 is hereby affirmed.

2. The trial court also found that the Borough's action in replacing the drainage pipe was consistent with its storm water drainage easement which existed for a long period of time. D.R.E. argues that since the Borough did not produce any agreement between the Borough and the Reading Company granting the Borough an easement for maintaining a drainage system on its property, the Borough's action constitutes a de facto taking. D.R.E. does not dispute that the Borough maintained the drainage pipe and the catch basin in the same location for over forty-three years to keep the storm water from flowing onto the Reading Company's property. Nonetheless, if a taking by the Borough did occur, it was more than forty-three years ago prior to D.R.E.'s purchase of Lot No. 5. Because the right to damages for a condemnation does not pass to a subsequent purchaser, D.R.E. is not entitled to damages for the Borough's use of the property for the drainage system. *Synes Appeal*, 401 Pa. 387, 164 A.2d 221 (1960); *Florek.*

Moreover, one who purchases land with notice that it is burdened with an existing easement takes the land subject to the easement irrespective of whether the deeds to the dominant landowners expressly grant the easement appurtenant. *Brady v. Yodanza*, 493 Pa. 186, 425 A.2d 726 (1981). Substantial evidence of record demonstrates that D.R.E. possessed knowledge of the easement by virtue of testimony that the outlet to the old pipe was exposed and visible from Lot No. 5.