**[J-27-2018] [OAJC: Mundy, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

| | | |
|---|---|---|
| STEPHEN J. SZABO AND MARY B. SZABO, | : | No. 46 WAP 2017 |
| | : | |
| | : | Appeal from the Order of the |
| Appellees | : | Commonwealth Court entered April |
| | : | 12, 2017 at No. 2039 CD 2015, |
| | : | reversing the Order of the Court of |
| v. | : | Common Pleas of Washington County |
| | : | entered October 6, 2015 at No. 2013- |
| | : | 7608 and remanding. |
| COMMONWEALTH OF PENNSYLVANIA, | : | |
| DEPARTMENT OF TRANSPORTATION, | : | ARGUED: April 11, 2018 |
| | : | |
| Appellant | : | |

**DISSENTING OPINION**

**JUSTICE DOUGHERTY**                    **DECIDED: FEBRUARY 20, 2019**

I respectfully dissent.

In property boundary disputes outside eminent domain and condemnation proceedings, this Court and others have long held owners of land are presumed to know what they own. *See Fidelity-Philadelphia Trust Co. v. Lehigh Valley Coal Co.*, 143 A. 474, 478 (Pa. 1928) (owner is presumed to know boundaries of his own land); *Piazzini v. Jessup*, 314 P.2d 196, 198 (Cal. Ct. App. 1957) ("the owner of land is presumed to know the area and boundaries of his own land") (citation omitted); *Newfound Mgmt. Corp. v. Sewer*, 885 F.Supp. 727, 756 (D.V.I. 1995) ("Owners of property presumptively know what they own and their lands' boundaries.") (citations omitted). In this matter, if appellees (Szabos) owned parcels 1 and 9 at any time, they apparently did not know it. Indeed, in order to consider excusing their failure to file preliminary objections to the

declaration of taking, one must either presume their ignorance of ownership of parcels 1 and 9, or their ignorance of the boundaries of parcel 5, because the maps attached to the declaration of taking clearly set forth the boundaries of all three properties, identified Szabos as the owners of parcel 5 only, and identified other individuals and entities as the owners of parcels 1 and 9. Of course, given what the maps revealed, if one presumes Szabos knew what they owned and knew the boundaries of their land, which they now claim includes all of parcels 1, 5 and 9, then their failure to file preliminary objections to the alleged inaccuracies is easily seen as a failure on their part to inspect adequately the declaration of taking and its attachments.

From the record, including Szabos' submissions to the lower courts and this Court, it is impossible to tell whether Szabos knew what they owned when the declaration of taking was filed.[1] It is my view, if Szabos knew what they owned, then the notice provided was clearly adequate to alert them to file preliminary objections and their subsequent attempt to challenge the extent and effect of the taking was properly deemed waived by the trial court. Moreover, if Szabos knew what they owned, the Commonwealth Court's determination Szabos received insufficient notice would be error, because the notice they received explicitly indicated they did not own parcels 1 and 9. Conversely, if Szabos did not know what they owned, when confronted with a declaration of taking, it was incumbent

---

[1] For example, on the one hand, Szabos state they hired a surveyor **after** they saw construction activity taking place "on other property owned by the Szabos (Parcels 1 and 9)." Appellees' Brief at 5. This statement clearly implies Szabos believed they owned parcels 1 and 9 **before** they hired a surveyor. On the other hand, they assert that **after** they read the resulting survey, they realized for "the **first** time" the declaration of taking "did not identify all of the Szabos' property[,]" implying their lack of knowledge of the extent of their ownership and boundaries prior to that time. *Id.* at 6 (emphasis added). The latter interpretation is the one they presented to the trial court where, in essence, they alleged their surveyor informed them they owned parcels 1 and 9 in addition to parcel 5. *See* Petition for Evidentiary Hearing, 5/4/15, at ¶7. PennDOT disputes Szabos' claim of ownership to parcels 1 and 9, as reflected in the information contained in the declaration of taking.

upon them to take immediate action to determine precisely what they owned in order to preserve their property interests.

Nevertheless, Justice Mundy, in the Opinion Announcing the Judgment of the Court (OAJC), determines notice to Szabos was deficient, given the fundamental protections of a person's property enumerated under our Constitution, and the fact the maps and declaration of taking did not state that parcels 1 and 9 were to be **condemned**. I am constrained to disagree, in part because I question whether appellant (PennDOT) was required to give Szabos notice of the condemnation of an adjacent property owner's parcel. Also, I believe the law recognizes the existence of potential prejudice to the Commonwealth and its taxpayers if any dispute as to the size of the property to be condemned is not raised by the condemnee at the time of the condemnation. Here, by the time Szabos made any objection, they had already accepted $587,000 estimated just compensation for parcel 5, PennDot had secured use of parcels 1 and 9 from the owners of record, and construction work had already begun. This is precisely the type of prejudice to the condemnor that can arise when the size of the property condemned is not challenged by the condemnee at the outset of proceedings. *See* 26 Pa.C.S. §306(a) (preliminary objections filed within 30 days after being served with notice of condemnation shall be exclusive method of challenging the declaration); *see also* 26 Pa.C.S. §307(c)(3)("In no event shall the condemnee be compelled to pay back to the condemnor the [estimated just] compensation paid [to condemnee]…, even if the amount of just compensation as finally determined is less than the compensation paid."); *West Whiteland Assocs. v. Dep't of Transp.*, 690 A.2d 1266, 1269 (Pa. Cmwlth. 1997) (plot plans constitute "the heart of a declaration of taking" — size of property condemned presents basic issue which must be decided at earliest possible stage).

In that regard, I disagree with the OAJC's determination that reliance on *West Whiteland* is misplaced. In *West Whiteland*, PennDOT filed a declaration of taking in June 1989 that included a plot plan and property plat showing property consisting of 71.526 acres before condemnation and 23.866 acres after the taking. The condemnee did not file preliminary objections. Almost four years later, the condemnee petitioned for the appointment of a board of viewers, and requested additional compensation based on the allegation that his property before the taking actually consisted of 179 acres. PennDOT argued that because the condemnee failed to file preliminary objections pursuant to Section 406(a) of the former Code, 26 P.S. §1-406 (repealed),[2] condemnee had waived the right to raise this claim.

The Commonwealth Court agreed. It noted, "[p]reliminary objections under Section [306] of the Code are intended as a procedure to resolve expeditiously all legal and factual challenges to the declaration of taking before the parties move to the second distinct proceeding of qualifying damages." *West Whiteland*, 690 A.2d at 1268, *citing North Penn Water Auth. v. A Certain Parcel of Land*, 650 A.2d 1197 (Pa. Cmwlth. 1994). "The plot plans and property plat filed with the declaration of taking and served upon a condemnee are part of and indeed, the heart of a declaration of taking. It is only by reference to such plans that one can determine what property is the subject of condemnation and, in the case of a partial taking, what part of a property has been taken." *Id.* at 1269, *citing Milford Traumbauersville Area Sewer Auth. v. Approximately 0.753 Acres of Land*, 358 A.2d 450 (Pa. Cmwlth. 1976).

The *West Whiteland* panel additionally observed in accordance with the pertinent provisions of the Eminent Domain Code (Sections 402 and 405 of the former Code —

---

[2] Repealed by Section 5 of the Act of May 4, 2006, P.L. 112 and replaced by 26 Pa.C.S. §306(a).

now Sections 302 and 305, 26 Pa.C.S. §§302 and 305, respectively), PennDOT had included in the declaration of taking a description of the property condemned and a reference to the place where the plans showing the condemned property were recorded and could be inspected as well as sent the condemnee a plot plan showing his entire property and the area taken. The court concluded the issue condemnee sought to contest, *i.e.,* "the size of [c]ondemnee's entire property," related to "information that must be included in the declaration of taking and notice of condemnation," and was so basic to the case that it had to be decided at the earliest possible stage by the filing of preliminary objections. *Id.* at 1269.

In my view, *West Whiteland* is instructive for the present case and supports PennDOT's position. Here, Szabos did not file preliminary objections to the declaration of taking, but years later claimed they actually owned parcel 5 and parcels 1 and 9 despite the plot plans and maps attached to the declaration of taking clearly listing parcels 1 and 9 as being owned by other entities. As previously explained, plot plans are essentially the heart of a declaration of taking. Because the plot plans set forth the boundaries of parcels 1, 5 and 9, explained how the boundaries were drawn, and identified other parties as the owners of parcels 1 and 9, the trial court correctly determined Szabos were placed on notice of any alleged error long before amorphous circumstances prodded them to hire a surveyor and file their petition for evidentiary hearing in May 2015. *See* Tr. Ct. Op. at 4 ("Szabos knew precisely what property was being taken[.]").[3] The disclosures in the

---

[3] Our review in an appeal from an eminent domain proceeding is limited to determining whether the lower court abused its discretion or committed an error of law and whether the findings of fact were supported by substantial evidence. *In re Condemnation for State Route 79*, 798 A.2d 725, 730 n.4 (Pa. 2002). In my view, the evidence supported the trial court's findings, and the Commonwealth Court erroneously determined that because "the plans failed to accurately identify the property which was part of the taking" the condemnation took "more of Szabos' property than indicated in the plans" and thus, PennDOT "did not provide adequate notice of the extent and effect of the taking." *Szabo v. Com., Dep't. of Transp.*, 159 A.3d 604, 607 (Pa. Cmwlth. 2017).

plans, together with the notice accompanying PennDOT's declaration which advised Szabos of a thirty-day time frame within which to object, were sufficient to put Szabos on notice of what property was being taken and condemned, even if they actually did not know the extent and boundaries of their land. Szabos were clearly on notice further timely investigation would be required to support preliminary objections in the event they disagreed with PennDOT's information.[4]

I also question the OAJC's determination PennDOT did not adequately identify the extent or effect of the taking. Szabos have maintained throughout all phases of this litigation that they did not waive their challenge by failing to file preliminary objections. Szabos argue an exception to waiver exists where the declaration of taking fails to adequately establish the extent or effect of the taking such that the condemnation amounts to a *de facto* taking. Although the OAJC acknowledges this argument, and ultimately accepts Szabos' view the declaration failed to establish the extent or effect of the taking, the OAJC does not expressly conclude a *de facto* taking occurred here. I would squarely address the issue, and determine there was no *de facto* taking which would excuse the failure to file preliminary objections.

---

[4] I note Szabos have always contended the property plan "is inaccurate in that it fails to show the entire property owned by Condemnees[.]" Petition for Evidentiary Hearing, 5/14/15 at ¶7, R.R. 117a. While Justice Wecht recognizes "the Szabos seek relief specifically due to a deficiency in the declaration," (Wecht J., concurring at 12), and that a challenge thereto must be raised via preliminary objections to the declaration, he also characterizes Szabos' claim as primarily one for just compensation and observes such claims must be raised in a petition for the appointment of viewers. *Id.* at 6. Notwithstanding the potentially unclear nature of the relief Szabos are seeking, and Justice Wecht's identification of "irregularities in the case law under the Code that cannot be avoided in this case" pertaining thereto, *id.* at 3, my review reveals the instant dispute is grounded primarily on the allegation the plans were erroneous at the time they were served on Szabos. I would hold when confronted with clearly erroneous or dubious descriptions of a condemnee's property in a declaration of taking, the condemnee is obligated to file preliminary objections thereto within 30 days.

With respect to this issue, PennDOT asserts the declaration of taking in this case adequately established the extent and effect of the taking. It asserts a *de facto* taking — for purposes of excusing the requirement of preliminary objections — occurs only when a condemnee could not have known that ownership interests in additional property unidentified in the declaration will be negatively affected. PennDOT distinguishes this case from the facts presented in *In re Commonwealth Dep't of Gen. Servs.*, 714 A.2d 1159 (Pa. Cmwlth. 1998) (condemnee did not waive claim of *de facto* taking by failing to raise same in preliminary objections where declaration of taking did not adequately establish extent or effect of taking and subsequent petition alleged unforeseen lost access to timber and riparian rights), and *Pennsylvania Dep't of Transp. v. Greenfield Twp. Prop. Owners*, 582 A.2d 41 (Pa. Cmwlth. 1990) (condemnees' failure to file preliminary objections to declaration of taking did not preclude later *de facto* taking allegation where condemnees unaware condemnation would leave property landlocked). PennDOT asserts both *Greenfield Twp.* and *Dep't. Gen. Servs.* involved allegations of a taking "beyond what was stated in the declaration of taking's description of property condemned and associated plans." Appellant's Brief at 21. PennDOT claims "[h]ere, Szabos do not allege a taking beyond what was described in the declaration of taking[,]" but instead allege "simply that property condemned by PennDOT belonged to them and not the owner identified by PennDOT." *Id.* at 21-22. PennDOT accordingly asserts "the exceptions in these cases [(*Greenfield Twp. and Dep't Gen Servs.*)] do not apply to this case, and therefore, do not excuse Szabos from filing preliminary objections to the declaration of taking pursuant to Section 306 of the Eminent Domain Code." *Id.* at 20.

I would first note, despite this Court's express inclusion of the citation to both cases in the second question upon which we granted review, Szabos do not cite to or discuss *Dep't Gen. Servs.* at all, and only briefly assert the holding in *Greenfield Twp.* "is on all

fours" with the facts of the present case. *Id.* at 27. In short, Szabos' position is that because they did not know parcels 1 and 9 were to be condemned when the declaration of taking was filed on January 10, 2013, the PennDOT activity on parcels 1 and 9 in 2015 amounted to a *de facto* taking which excused their failure to file preliminary objections. I reiterate that the record makes clear Szabos had actual notice the declaration of taking listed other persons and entities as the record owners of parcels 1 and 9 triggering the requirement to file preliminary objections if they disagreed with the plans. *See supra* at 4-6. I would expressly analyze whether the actual taking of parcels 1 & 9 for the purposes of the highway widening and improvement project was a *de facto* taking of Szabos' property that could not have been foreseen, thus excusing their failure to file preliminary objections. I would conclude there was no *de facto* taking.[5]

"[A] *de facto* taking occurs when an entity clothed with the power of eminent domain substantially deprives an owner of the beneficial use and enjoyment of his property." *In re De Facto Condemnation & Taking of Lands of WFB Assocs.*, L.P., 903 A.2d 1192, 1199 (Pa. 2006). *See also Appeal of D.R.E. Land Developing, Inc.*, 613 A.2d 96, 98 (Pa. Cmwlth. 1992) ("To find a *de facto* taking, there must be exceptional circumstances which have substantially deprived the property owner of the use and enjoyment of his or her property."). There is no bright-line criterion or exact test courts employ to determine whether a *de facto* taking has occurred, and each case must be examined on its own facts and circumstances. *Gaughen v. Commonwealth, Dep't of Transp.*, 554 A.2d 1008, 1013 (Pa. Cmwlth. 1989); *D.R.E. Land Developing*, 613 A.2d at 98, *citing McGaffic v. Redev. Auth. of City of New Castle*, 548 A.2d 653 (Pa. Cmwlth.

---

[5] I disagree with Justice Wecht's position an analysis of whether a *de facto* taking occurred is unwarranted because it is outside the questions upon which we granted review. Concurring Opinion at 16, n.8. Both *Greenfield Twp.* and *Dep't Gen Servs.* involved *de facto* takings.

1988). "The property owner in a *de facto* taking, pursuant to the Eminent Domain Code, is under a heavy burden to establish that such a taking has occurred[.]" *In re Property Situate Along Pine Rd.*, 743 A.2d 990, 993 (Pa. Cmwlth. 1999). "Speculative and conjectural harms are insufficient to show the substantial deprivation of use and enjoyment necessary to a *de facto* taking claim." *McMaster v. Twp. of Bensalem*, 161 A.3d 1031, 1037 (Pa. Cmwlth. 2017).

In *Greenfield Twp.*, the condemnees ("DeMarcos") were owners of approximately 100 acres in Greenfield Township, Erie County. PennDOT filed a declaration of taking which condemned 15.08 acres of DeMarcos' land for the construction of an expressway. DeMarcos did not file preliminary objections to the declaration of taking, and PennDOT paid them $16,300 just compensation. The condemnation bisected the remaining portions of DeMarcos' property into two parcels, one containing 16.86 acres north of the expressway, and another containing 68.77 acres south of the expressway. As a result of the condemnation, DeMarcos had no access to the now landlocked southern portion of their property. *Greenfield Twp.*, 582 A.2d at 43.

PennDOT attempted to cure the problem by condemning a portion of an adjacent landowner's property for the purpose of providing the DeMarcos with a right-of-way to reach the southern portion of their property. DeMarcos found the right-of-way unusable because it consisted of a gully and a ravine which were inaccessible and could not be traversed by automobile or farm vehicle. They petitioned for the appointment of viewers alleging a *de facto* taking of the southern portion of their property; the viewers determined the right-of-way was sufficient to provide access to the southern portion, the southern portion was not landlocked and a *de facto* taking had not occurred. *Id.* DeMarcos appealed to the Erie County Court of Common Pleas, which reversed, concluding the right-of-way was unusable and a *de facto* taking of the southern portion of DeMarcos'

property had occurred. *Id.* PennDOT appealed, claiming DeMarcos were precluded from alleging a *de facto* taking because they had not filed preliminary objections to the declaration of taking. *Id.*

The Commonwealth Court analogized the circumstances to *City of Pittsburgh v. Gold*, 390 A.2d 1373 (Pa. Cmwlth. 1978), which held a condemnee who had not filed preliminary objections in a condemnation proceeding was not precluded from later alleging a *de facto* taking, because the damage to his property did not become evident until two years after the declaration of taking had been filed. The *Greenfield Twp.* court reasoned DeMarcos were similarly excused from filing preliminary objections because they were unaware at the time of the filing of the declaration of taking that the southern portion of their property would be landlocked, relying on PennDOT's assurances that it would provide a usable right-of-way. *Greenfield Twp.*, 582 A.2d at 44. The court held "when an entity clothed with the power of eminent domain has, by even a non-appropriative act, substantially deprived an owner of the beneficial use and enjoyment of his property, a *de facto* taking will be deemed to have occurred." *Id.*

In *Dep't Gen. Servs.*, the condemnor, the Department of General Services ("DGS"), was authorized to acquire several miles of abandoned railroad bed along the Youghiogheny River for the construction of a hike/bike trail to be controlled and administered by the Department of Natural Resources as an extension of Ohiopyle State Park. *Dep't Gen. Servs.*, 714 A.2d at 1160-61. The abandoned railroad bed ran along the eastern portion of an 1124 acre tract owned by the condemnee, Curry Lumber Company ("Curry"). DGS filed a declaration of taking, to which Curry filed preliminary objections claiming the declaration failed to depict the extent of the land being condemned. *Id.* at 1161. DGS filed an amended declaration and Curry again filed preliminary objections claiming an inadequate description of the property. DGS filed a

second amended declaration of taking "which was followed by various motions, answers, and orders regarding the need for a current site survey." *Id.* The court subsequently approved a stipulation between the parties that DGS would perform a site survey at a future date preceding construction of the bike/hike trail and Curry would withdraw all preliminary objections, entitling DGS to immediate possession of the condemned property. *Id.*

Curry filed a petition for payment of estimated just compensation and in May 1993, Curry received $30,000. Construction of the bike/hike trail began. In July 1996, Curry filed a petition for the appointment of viewers alleging the site survey was not performed as ordered, and that a *de facto* taking had occurred because Curry lost access to the remaining property as well as timber and riparian rights. DGS filed preliminary objections to the petition for the appointment of viewers seeking an evidentiary hearing. The trial court denied DGS's preliminary objections following submission of briefs and oral argument. *Id.*

On appeal, DGS argued*, inter alia*, that Curry waived the issue of a *de facto* taking by failing to raise the issue in preliminary objections to the declaration of taking. The panel relied on *Greenfield Twp.* to reject that argument by DGS, and determined "[t]he record here supports the conclusion that the [d]eclaration of [t]aking did not adequately establish the extent or effect of the taking. Therefore, this issue is not waived." *Id.* at 1162.

As *Greenfield Twp.* and *Dep't Gen. Servs.* demonstrate, Pennsylvania jurisprudence recognizes a *de facto* taking occurs when there has been a substantial deprivation of a party's use of his or her land even though there has been no physical intrusion upon it. The Commonwealth Court has confirmed, "[t]he theory of *de facto* taking has been developed in response to" circumstances in which a government improvement

project may "so substantially interfere with one's use and enjoyment of his property as to inflict a compensable injury … even though the power of eminent domain has not been formally exercised against the property in question and there has been no physical intrusion of it." *Filbert Ltd. Partnership Appeal*, 441 A.2d 1345, 1352 (Pa. Cmwlth. 1982). This principle is illustrated in *Greenfield Twp.*, where there had been no physical intrusion upon the southern portion of DeMarcos' property. Instead, that portion had become landlocked, and thus unusable, due to the roadway construction project that took place on the condemned portion of DeMarcos' property, resulting in a *de facto* taking. *Greenfield Twp.*, 582 A.2d at 44. Similarly, in *Dep't Gen. Servs.*, even though there had been no physical intrusion, Curry lost access to timber and riparian rights on its property adjacent to the condemned property upon which the hike/bike trail had been constructed, and thus, the court determined there were sufficient facts of a *de facto* taking of the adjacent property to warrant an evidentiary hearing on the matter, despite the failure to file preliminary objections. *Dep't Gen. Servs.*, 714 A.2d at 1162. Importantly, in both cases, the extent and effect of the taking were not known, in part, because condemnees were unaware at the time their property was condemned that unintended consequences affecting their rights would follow. *Id.*, *discussing generally Greenfield Twp.*, 582 A.2d 41.

With these principles in mind, I observe there was an actual intrusion upon parcels 1 and 9 by the condemnor here: PennDOT took direct, observable occupation of the land via physical construction and widening of the roadway as part of its condemnation and *de jure* taking of those parcels from persons and entities other than Szabos. Szabos seek to convert PennDOT's plainly *de jure* taking of parcels 1 & 9 (from the owners of record as set forth on the plans contained in the declaration of taking for parcel 5) into a *de facto* taking of parcels 1 & 9 from themselves, in order to excuse their failure to file preliminary objections to the declaration of taking. Szabos ask us to conclude the taking was *de facto*

with respect to them in part because they allegedly did not know in January 2013 that parcels 1 & 9 had been condemned, and because they did not know at that time the roadway construction would even impact parcels 1 & 9.

I would conclude Szabos' arguments in this regard are unavailing. Indeed, Szabos' assertion the plans attached to PennDOT's declaration of taking did not indicate parcels 1 and 9 were related to or a part of the *de jure* condemnation of parcel 5 is misleading. First, my review of the plans attached to the declaration show parcels 1 and 9 are in closest proximity to the site of the planned construction. Any careful review of the plans would lead a reasonable person to conclude, particularly one in purported possession of the land, the greatest effect of the proposed construction would occur on parcels 1 and 9. Second, despite their arguments to the contrary, Szabos appear to acknowledge they understood parcels 1 and 9 would be condemned in addition to parcel 5. Tellingly, their brief states, "A party is not required to assert ownership to condemned property by filing preliminary objections when the declaration of taking says the property condemned is owned by another." *Id.* at 11. Under the facts of this case, I would conclude there was no *de facto* taking as the plans and attachments adequately revealed the effect and extent of the taking such that there were no unanticipated consequences of PennDOT's proposed condemnation. I would decline to expand the range of circumstances establishing a *de facto* taking to include unsubstantiated averments of mistake on the face of plans attached to a declaration of taking which clearly set forth the parcels, their owners, their boundaries, and explained underlying distance errors and anomalies in the chain of title upon which the plans are drawn.[6]

---

[6] As the OAJC acknowledges, the maps contained precise information showing errors in the chain of title for Szabos' property, including distance errors and failure to record an outsale.

Moreover, it is clear the size of the condemned property is a basic and fundamental aspect of a taking that must be finally determined at the earliest opportunity. Thus, in my view, it is incumbent upon the condemnee to investigate further and, if in disagreement with the plans attached to the declaration of taking, to file timely preliminary objections. 26 Pa.C.S. §306(a).

Accordingly, I respectfully dissent.

Justice Donohue joins this dissenting opinion.