**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| STEPHEN J. SZABO AND MARY B. SZABO, | : | No. 46 WAP 2017 |
| | : | |
| | : | Appeal from the Order of the |
| Appellees | : | Commonwealth Court entered April |
| | : | 12, 2017 at No. 2039 CD 2015, |
| | : | reversing the Order of the Court of |
| v. | : | Common Pleas of Washington County |
| | : | entered October 6, 2015 at No. 2013- |
| | : | 7608 and remanding. |
| COMMONWEALTH OF PENNSYLVANIA, | : | |
| DEPARTMENT OF TRANSPORTATION, | : | ARGUED: April 11, 2018 |
| | : | |
| Appellant | : | |

**OPINION ANNOUNCING THE JUDGMENT OF THE COURT**

**JUSTICE MUNDY**                                                  **DECIDED: FEBRUARY 20, 2019**

This appeal asks us to determine whether a failure to file preliminary objections to a declaration of taking resulted in waiver under Section 306 of the Eminent Domain Code, 26 Pa.C.S. §§ 101-1106 (Code). After careful review, we hold that the declaration did not establish the extent or effect of the taking. Accordingly, the failure to file preliminary objections within thirty days of service did not result in waiver of the right to assert ownership and seek just compensation, and therefore we affirm the decision of the Commonwealth Court to remand the matter for an evidentiary hearing.

Appellees, Steven and Mary Szabo, own real property located at 3101 Washington Road, McMurry, Pennsylvania where they operate a hair salon and skin care business. The property, which abuts both Route 19 and Old Washington Road, is improved with a parking lot and commercial structure. Appellant, the Pennsylvania Department of

Transportation (PennDOT or Department) developed a road expansion plan to connect Route 19 with Old Washington Road by means of an exit ramp that would run across a section of the Szabos land, identified in the declaration of taking as Parcel 5. The Department attempted to purchase the property from the Szabos; however, the parties could not come to an agreement.

On January 10, 2013, after six months of negotiations, PennDOT served the Szabos with a declaration of taking for a 1.040 acre right of way, and a 1.729 acre temporary construction easement on Parcel 5, for the purpose of expanding State Route 19. Declaration of Taking Property Plan, 12/3/12 at Sheet 1 of 2. The plot plan stated that Parcel 5 had an effective size of 3.128 acres, and the declaration of taking marked the right of way seized from Parcel 5 as required under Section 305.[1]

The plot plan served with the declaration also listed two adjacent parcels of land, Parcels 1 and 9. The owners of Parcel 1 were listed as Edward A. Courtney, Jr. and Susan H. Courtney, H&W (1/2 Interest) & Heirs of Eveline H. Roach; Being Bessie A. Fife Her Heirs and Assigns (1/2 Interest), and the owner of Parcel 9 was listed as The Home Rule Municipality of Peters Township. *Id.* at Sheet 1 of 2. Lines demarcating Parcel 5 from Parcels 1 and 9 were labeled "probable [sic] correct" and a property note indicated

---

[1] Section 305 governing notice provides, in pertinent part:

**§ 305 Notice to condemnee**

**(c) Contents.--**The notice to be given the condemnee shall state:

. . .

> (9) In the case of a partial taking, a plot plan showing the condemnee's entire property and the area taken.

26 Pa.C.S. § 305(c)(9).

that "the Gerrick[2] plan, dated September 1996 . . . was not used for the Szabo boundary lines." *Id.* The note described several errors discovered within the chain of title, including a distance line of 178.2 feet, mislabeled as 270 feet, and an unrecorded outsale to the Montour Railroad Company, which was then transferred to the Home Rule Municipality of Peters Township in 1985. *Id.* The lower portion of both plans stated the "private property lines are plotted from the deed of record," but noted those lines "were not surveyed by the professional land surveyor responsible for the project" and advised "this property plot is not to be substituted for a boundary survey." *Id.*

Importantly, the plot plans attached to the declaration of taking did not indicate that any portions of Parcels 1 and 9 were condemned. Moreover, the plot plan failed to illustrate that Parcel 1 was condemned on November 8, 2012, and Peters Township conveyed Parcel 9 to PennDOT by deed in lieu of condemnation, recorded on June 26, 2012. Thus, the Szabos were provided with notice solely of the portion of Parcel 5, which was correctly marked as owned by the Szabos, that was to be condemned.

Correspondence attached to the notice of condemnation advised the Szabos that they had the right to receive estimated just compensation for land taken from Parcel 5 in the amount of $587,000 and their acceptance of payment would in no way jeopardize their right to petition the court to appoint a board of viewers to determine the precise amount of compensation to which they were entitled. A memorandum of law attached to the declaration informed the Szabos they could, within 30 days, file preliminary objections to challenge the declaration of taking.[3] Because the Szabos had no objection to the portion of Parcel 5 indicated as condemned, the Szabos did not file preliminary objections.

---

[2] H. George Gerrick was the predecessor in interest to the Szabos.

[3] Section 306 of the Code addresses preliminary objections to a declaration of taking and provides, in pertinent part:

On April 8, 2013, PennDOT deposited $587,000 estimated just compensation with the Court of Common Pleas of Washington County (Trial Court). On December 12, 2013, the Szabos filed a petition for the appointment of viewers pursuant to Section 502[4] to

§ 306. Preliminary objections

(a) Filing and exclusive method of challenging certain matters.--

(1) Within 30 days after being served with notice of the condemnation, the condemnee may file preliminary objections to the declaration of taking.

. . .

(3) Preliminary objections shall be limited to and shall be the exclusive method of challenging:

(i) The power or right of the condemnor to appropriate the condemned property unless it has been previously adjudicated.

(ii) The sufficiency of the security.

(iii) The declaration of taking.

(iv) Any other procedure followed by the condemnor.

(b) Waiver.-- Failure to raise by preliminary objections the issues listed in subsection (a) shall constitute a waiver. Issues of compensation may not be raised by preliminary objections.

26 Pa.C.S. § 306 (a), (b).

[4] Section 502 addresses the appointment of a board of viewers and provides, in pertinent part:

§ 502. Petition for appointment of viewers

(a) Contents of petition. -- A condemnor, condemnee or displaced person may file a petition requesting the appointment of viewers, setting forth:

. . .

(6) A request for the appointment of viewers to ascertain just compensation.

26 Pa.C.S. § 502 (a)(6).

determine just compensation for the condemnation of Parcel 5. Petition for Evidentiary Hearing, 5/13/15, at ¶¶ 4-5. The trial court appointed a board of viewers and the Szabos requested and received their estimated just compensation of $587,000 from the trial court. A hearing before the board of viewers was scheduled for May 21, 2015.

On May 13, 2015, the Szabos asserted for the first time that the ownership interests provided in the declaration of taking were incorrect and filed a petition for an evidentiary hearing with the trial court. The petition informed the court that the Szabos had recently hired a registered surveyor to prepare a plan depicting their property. The surveyor's plan demonstrated that the plan attached to the declaration of taking was inaccurate in that it failed to show the entire property owned by the Szabos prior to condemnation. Petition for Evidentiary Hearing, 5/13/15, at ¶ 7. The Szabos notified PennDOT of the error, produced the survey prepared for them by the registered surveyor, offered to meet with PennDOT to demonstrate the results of the title search performed by the Commonwealth Land Title Company, and requested the official plan be changed. In response, PennDOT denied that its plans were erroneous, and all attempts at remedy failed. The Szabos therefore requested, "due to the issue of fact regarding the extent and nature of the property interest condemned and the owners thereof, an evidentiary hearing . . . to resolve said issue." *Id.* at 9.

In its answer to the petition, PennDOT admitted that while Section 504(d)(5)[5] of the Code mandates that an evidentiary hearing be conducted by the court and not the

---

[5] Section 504 addresses the appointment of viewers and provides, in pertinent part:

**§ 504. Appointment of viewers**

**(d) Preliminary objections.--**

. . .

board of viewers, it was inapplicable in this instance because Section 504(d)(5) does so only in the specific context in which issues are raised through preliminary objections. Further, PennDOT denied that the plans included with the declaration of taking were inaccurate, stating that strict proof is demanded at the time of hearing demonstrating ownership. Notwithstanding the request for proof, PennDOT argued that the trial court did not have jurisdiction to address the averments raised by the Szabos because the Szabos admittedly had not raised these issues within thirty days of service of the declaration of taking. Consequently, issues related to the extent and nature of the property interest condemned were waived under Section 306. The trial court directed the parties to file briefs.

In their brief to the trial court, the Szabos repeated that the plan did not adequately establish the extent or effect of the taking because it did not show the entirety of their property interests prior to the condemnation. Accordingly, they argued their claim should not be subject to waiver under Section 306.

PennDOT, in response, emphasized waiver under Section 306, and asserted that the trial court did not have jurisdiction over these issues because they had not been raised within thirty days of receipt of the declaration of taking. It stated "substantial prejudice" to the Department would result from raising an issue "which is so basic to the case" beyond the span of thirty days. Brief in Opposition to Plaintiffs' Petition for Evidentiary Hearing, 6/12/2015, at 8.

---

(5) If an issue of fact is raised, the court shall conduct an evidentiary hearing or order that the evidence be taken by deposition or otherwise, but in no event shall evidence be taken by the viewers on this issue.

26 Pa.C.S. § 504 (d)(5).

On August 17, 2015, the trial court denied the Szabos' Petition for Evidentiary Hearing. In ruling against the Szabos, the court noted that "there [was] no dispute as to what property PennDOT desire[d] to take -- the Szabos [did] not argue that the geographical boundaries of PennDOT's plan [were] ambiguous." Trial Ct. Op., 8/17/15, at 3. Further, the court concluded that "there [was] no dispute about the effect of the taking, i.e. what impact it would have on the remainder of the Szabos' property interest." *Id.* Characterizing a failure in "extent or effect" as fundamentally a question of notice to the landowner at the time the declaration is filed, and citing *In re Commonwealth, Department of General Services*, 714 A.2d 1159 (Pa. Cmwlth. 1998)*,* and *Commonwealth, Department of Transportation v. Greenfield Township-Property Owners*, 582 A.2d 41 (Pa. Cmwlth. 1990), the court concluded that the Szabos knew what property was being taken and did not allege the occurrence of some unanticipated consequence unknown to them at the time of the declaration, which would have explained the failure to file preliminary objections.[6]

The Szabos filed a timely notice of appeal to the Commonwealth Court raising two assertions of error: "(1) whether the trial court erred in holding the declaration of taking filed by the Department did not deprive the Szabos of adequate notice of the extent or effect of the taking; and (2) whether the Szabos' failure to file preliminary objections constituted waiver of their right to raise the inadequacy of the plan attached to the

---

[6] The trial court did not reference the record or make a specific finding of fact explaining which property the Szabos knew PennDOT was taking. Further, in its conclusion the trial court acknowledged while the Eminent Domain Code "is quite clear concerning the applicable procedure for challenging a declaration of taking . . . via preliminary objections . . . a very limited exception to this requirement exists in situations where the declaration fails to give the landowner sufficient notice of the extent or effect of a taking." Trial Ct. Op., 8/17/15, at 5. Nevertheless, the trial court concluded the facts of this case did not warrant the exception.

declaration of taking." *Szabo v. Com., Dep't of Transp.*, 159 A.3d 604, 606 (Pa. Cmwlth. 2017).

The Commonwealth Court reversed the decision of the trial court in a unanimous opinion and remanded for an evidentiary hearing to determine the property interests affected by the taking and the proper compensation for the condemned property. The Commonwealth Court explained that Section 305 requires the condemnor to provide written notice within thirty days of the filing of a declaration of taking. To comply with the Code, notice must contain a reasonable identification of the property. 26 Pa.C.S. § 305(c)(8). The court explained that in *Department of General Services*, it held that a landowner did not waive the issue of *de facto* taking by failing to raise that issue in preliminary objections where "the Declaration of Taking did not adequately establish the extent or effect of the taking." *Szabo*, 159 A.3d at 608 (citing *Dep't of Gen. Servs.*, 714 A.2d at 1162). In that case, the Department of General Services (DGS) seized a right of way from a condemnee's riverfront property, limiting access to the section of remaining property which adjoined the river. DGS agreed to perform a site survey, but did not do so, and the condemnee requested an evidentiary hearing. DGS asserted that the issue of *de facto* condemnation should have been raised through preliminary objections and was therefore waived. The Commonwealth Court held otherwise, citing the holding in *Greenfield Township* that "landowners who were unaware at the time a declaration of taking was filed that a portion of their property would be landlocked as a result of the condemnation, did not waive the issue in preliminary objections to the declaration of taking." *Dep't of Gen. Servs.*, 714 A.2d at 1162.

Here, PennDOT filed plans which illustrated the proposed taking and identified the parties and their affected property interests. The Commonwealth Court explained that the plans incorrectly identified property owned by the Szabos as owned by other parties.

The Szabos only discovered this error after PennDOT began construction and the Szabos hired a surveyor. Accordingly, because the Department failed to accurately identify the property that was part of the taking, the Commonwealth Court concluded PennDOT took from the Szabos more than was indicated in the plans without providing adequate compensation.

Addressing the second argument, that of waiver, the Commonwealth Court noted that because PennDOT did not provide adequate notice, the Szabos' subsequent discovery resulted in a *de facto* taking.[7] The Szabos argued that under the trial court's holding, they, not PennDOT, bore the burden of preparing accurate plans. This would force a condemnee to file preliminary objections in every case regardless of whether a basis existed at the time, so as to avoid waiver. PennDOT reiterated that it had provided proper notice and argued that Section 306 provides that preliminary objections are the exclusive means of challenging the nature and extent of the property interest by the condemnee. Accordingly, the Szabos should not be afforded an evidentiary hearing. Again, citing *Department of General Services*, the Commonwealth Court noted that "the courts have recognized that a condemnee does not waive such issues where the declaration of taking does not adequately establish the extent or effect of the taking." *Szabo*, 159 A.3d at 608. Here, PennDOT did not adequately identify the property. Therefore, the plans did not adequately establish the extent or effect of the taking, and the Szabos did not waive their right to raise the issue. Accordingly, the Commonwealth Court remanded for an evidentiary hearing.

---

[7] "[T]he law is well settled that when an entity clothed with the power of eminent domain has, by even a non-appropriative act, substantially deprived an owner of the beneficial use and enjoyment of his property, a *de facto* taking will be deemed to have occurred." *Greenfield Twp.*, 582 A.2d at 44 .

PennDOT filed a petition for allowance of appeal raising two questions, which this Court granted. The Department asks this Court:

> (1) By failing to file preliminary objections pursuant to section 306 of the Eminent Domain Code, 26 Pa.C.S. 306, did [Appellees] waive their right to assert ownership and seek additional just compensation for the condemnation of two parcels which were allegedly mistakenly depicted as belonging to two other legal entities in plans attached to the declaration of taking?
>
> (2) Did [Appellant's] alleged mistake in the plans attached to a declaration of taking, constitute the failure to adequately establish the extent or effect of the taking, thereby excusing [appellees] from filing preliminary objections under section 306 of the Eminent Domain Code. See *Pennsylvania Dep't Gen. Servs.*, 714 A.2d 1159 (Pa. Cmwlth. 1998) and *Pennsylvania Dep't Trans. v. Greenfield Twp. Prop. Owners*, 582 A.2d 41 (Pa. Cmwlth. 1990)?

*Szabo v. Com., Dep't of Transp.*, 172 A.3d 1109 (Pa. 2017) (*per curiam*).

The gravamen of PennDOT's argument is that it provided sufficient notice under Section 305 because it outlined the entirety of land seized for the project in the declaration of taking served on the Szabos. PennDOT argues that although the parcels were taken at different times, through separate proceedings, the Szabos were on notice of the property taken and should have challenged the inaccuracies through preliminary objections. Notice under Section 305 is directly at issue; accordingly, we will initially address the second of Petitioner's questions because its resolution will bear upon the first.

In an appeal from an eminent domain proceeding, our review is limited to determining whether the lower court abused its discretion or committed an error of law or whether the findings of fact were supported by substantial evidence. *In re Condemnation for State Route 79*, 798 A.2d 725, 730 n.4 (Pa. 2002).

The Eminent Domain Code provides in pertinent part:

### § 302. Declaration of taking

. . .

**(b) Contents.--**The declaration of taking shall be in writing…and contain the following.

. . .

> (5) a description of the property to be condemned, sufficient for identification specifying the municipal corporation and the county or counties where the property taken is located, a reference to the place of recording in the office of the recorder of deeds of plans showing the property condemned or a statement that plans showing the property condemned are on the same day being lodged for record or filed in the office of the recorder of deeds in the county in accordance with section 304 (relating to recording notice of condemnation).

26 Pa.C.S. § 302(b)(5). In concert with Section 302, Section 305 states, in pertinent part:

### §305. Notice to condemnee

. . .

**(c) Contents.--**The notice to be given the condemnee shall state:

. . .

> (8) A statement that the condemnee's property has been condemned and a reasonable identification of the property.
>
> (9) In the case of a partial taking, a plot plan showing the condemnee's entire property and the area taken.
>
> (10) A statement of the nature of the title acquired.
>
> (11) A statement specifying where a plan showing the condemned property may be inspected in the county in which the property taken is located.
>
> . . .
>
> (13) A statement that, if the condemnee wishes to challenge the power or the right of the condemnor to appropriate the condemned property, the sufficiency of the security, the procedure followed by the condemnor or the declaration of taking, the condemnee must file preliminary objections within 30 days after being served with notice of condemnation.

26 Pa.C.S. § 305(c)(8),(9), (10), (11), (13).

The Commonwealth Court has recognized that, "[t]he plot plans and property plat filed with the declaration of taking and served upon a condemnee are part of and indeed, the heart of a declaration of taking. It is only by reference to such plans that one can determine what property is the subject of condemnation and, in the case of a partial taking, what part of the property has been taken." *West Whiteland Assocs. v. Com. Dep't*

*of Transp.*, 690 A.2d 1266 (Pa. Cmwlth. 1997) (citing *Milford Traumbaursville Area Sewer Auth. v. Approximately .753 Acres of Land*, 358 A.2d 450 (Pa. Cmwlth. 1976)). "We have previously recognized that the nature of the property interest a party possesses, if any, in an eminent domain proceeding, is properly raised by way of preliminary objections. And the failure to raise the issue by means of preliminary objections constitutes a waiver of such issue." *In re Condemnation by Com., Dep't of Transp.*, 535 A.2d 1210, 1214 (Pa. Cmwlth. 1988) (*Bernstein Appeal*) (internal citations omitted). However, in limited cases, a condemnee who does not file preliminary objections may still be afforded relief when the "damage which occurred to the property as a result of the condemnation activity became apparent two years [a]fter the Amended Declaration of Taking was filed," *City of Pittsburgh v. Gold*, 390 A.2d 1373, 1376 (Pa. Cmwlth. 1978), or where the condemnees "were unaware that their property had been landlocked," at the time of declaration and "were not parties to the proceeding" where PennDOT condemned neighboring property to provide access. *Greenfield Twp.*, 582 A.2d at 44.

Instantly, PennDOT maintains that the Szabos waived their right to assert ownership and seek additional just compensation. PennDOT contends that Section 306 clearly provides, "filing preliminary objections within 30 days of notice of the condemnation, is the exclusive means available to challenge the nature and extent of [the] property interest held by [the] condemnee at the time of condemnation." Appellant's Brief at 11 (citing *West Whiteland*, 690 A.2d at 1269-70). The description of property to be condemned is so basic to a condemnation case, that it must be decided at the earliest possible stage so as to avoid potential prejudice to the condemnor. *See Id.* ("[t]o raise the size of the property condemned after a petition for appointment of viewers has been filed can result in substantial prejudice to the condemnor."). PennDOT notes that under Section 307(c)(3), "[i]n no event shall the condemnee be compelled to pay back to the

condemnor the compensation paid under subsection (a) or (b), even if the amount of just compensation as finally determined is less than the compensation paid." 26 Pa.C.S. § 307(c)(3).

PennDOT avers that subject to *West Whiteland* and *Bernstein Appeal*, which concern challenges to the extent and nature of property interests acquired via eminent domain, the Szabos claims are waived. In *Bernstein Appeal*, the Commonwealth filed preliminary objections to the condemnee's petition for appointment of viewers, asserting waiver. The matter began in 1971 when PennDOT condemned an easement interest for construction of the Vine Street Expressway. PennDOT revised the plan and filed a second taking on July 25, 1984, taking the fee title underlying the easement. The condemnees did not file preliminary objections and instead petitioned for the appointment of a board of viewers. PennDOT filed preliminary objections, and the condemnees answered, averring that PennDOT had abandoned the original easement by changing its planned use, and that the new use as a parking garage was not a valid transportation purpose. At issue in that case was whether these claims were waived for failure to file preliminary objections. The court noted that "the nature of the property interest a party possesses, if any, in an eminent domain proceeding is properly raised by way of preliminary objections. And the failure to raise the issue by means of preliminary objections constitutes a waiver of such issues." *Bernstein Appeal*, 535 A.2d at 1214 (internal citations omitted). Because the issues challenged the condemnor's power to acquire the premises, they should have been raised by way of preliminary objections and the court found them waived.

In *West Whiteland*, the Commonwealth Court was asked to determine whether a condemnee was required to raise the unity of purpose doctrine set forth in then-Section

605[8] through preliminary objections. In 1989, PennDOT filed a notice of taking for 23.866 acres of unimproved property from a 71.526 acre parcel. The condemnee did not file preliminary objections. Four years later, the condemnee petitioned for the appointment of a board of viewers. At the hearing, the condemnee's witness testified that the property before condemnation was actually 179 acres based upon the unity of purpose doctrine. The board based its report upon the 179 acre parcel, and the trial court affirmed. The Commonwealth Court reversed, accepting PennDOT's argument that it had "served on Condemnee a plot plan and property plat which showed the Condemnee's entire property before condemnation was 71.526 acres, the area taken was 23.866 acres, and the after condemnation area was 47.66 acres." *West Whiteland*, 690 A.2d at 1268. Noting that "[t]he plot plans and property plat filed with the declaration of taking and served upon a condemnee are part of and indeed, the heart of a declaration of taking," and with citation to *Bernstein Appeal*, the court held that the trial court erred in allowing the condemnee to assert unity of purpose after thirty days.

Here, PennDOT asserts the plans clearly depict Edward Courtney, Jr. and Susan Courtney and Peters Township to be the owners, respectively, of Parcels 1 and 9. Thus, this clear error should have been resolved through preliminary objections. PennDOT further avers notice was proper because it adequately established the extent or effect of

---

[8] Section 705 (previously 605) addresses unity of purpose and provides:

**§ 705. Contiguous tracts and unity of use**

Where all or a part of several contiguous tracts in substantially identical ownership is condemned or a part of several noncontiguous tracts in substantially identical ownership which are used together for a unified purpose is condemned, damages shall be assessed as if the tracts were one parcel.

26 Pa.C.S. § 705.

the taking. It contends the Szabos had notice of the property to be condemned for the highway project after six months of prior settlement negotiations from June 2012 until the declaration of taking was filed in January 2013. Because the original and revised plans depict the parcels to be condemned, they satisfy the Section 305(c)(8)-(11) requirements for notice. Further, PennDOT distinguishes the instant case from *Department of General Services* and *Greenfield Township*, which involved *de facto* takings. It avers that in each case, the condemnees failed to file preliminary objections because they were unaware and could not have known at the time of the taking that their properties would become landlocked. PennDOT summarizes the holdings as such: "a condemnee may file preliminary objections more than 30 days after a taking if condemnees could not have known that additional property not identified in the declaration of taking would be taken as a consequence of being landlocked." Appellant's Brief at 21. Returning to the instant factual situation, PennDOT recounts that the Szabos were aware of the property being condemned, filed a petition for appointment of board of viewers, accepted compensation for Parcel 5, and did not raise any issue regarding the ownership of Parcels 1 and 9 until May 13, 2015, seventeen months after they had filed for appointment of a board of viewers.

The Szabos contend that PennDOT perpetrated a *de facto* taking of Parcels 1 and 9 when it did not include them in the *de jure* declaration of taking for Parcel 5 and identified them as being owned by other parties. They note that PennDOT complied with Section 305 notice when it filed the Declaration of Taking for Parcel 5 on January 10, 2013. However, Parcel 1 was condemned on November 8, 2012, and Peters Township conveyed Parcel 9 to PennDOT by deed in lieu of condemnation, recorded on June 26, 2012. The Szabos explain that their declaration of taking did not mention either of these dates, or comply with the requirements of Section 305 for Parcels 1 and 9. They note

that whether service of a notice of condemnation complied with the explicit requirements of the Code is a pure question of law, and the evidence shows that the declaration of taking filed on January 10, 2013, condemned portions of Parcel 5 only.

The Szabos assert that errors inherent in the plans provided by PennDOT failed to provide notice and adequately establish the extent or effect of the taking. They note that "a landowner's failure to file preliminary objections to a declaration of taking of one portion of his property does not preclude the subsequent allegation of a *de facto* taking of another portion of his property." *Snitzer, Pennsylvania Eminent Domain*, § 3.6.1, p. 69 (2017 ed.) (citing *In re Condemnation by Com., Dep't of Transp. (Saul)*, 512 A.2d 79 (Pa. Cmwlth. 1986)). When a landowner is unaware at the time the declaration of taking is filed that a subsequent *de facto* taking of another property they owned would occur, the declaration of taking failed to adequately establish the extent or effect of the taking. *In re Com., Dep't of Gen. Servs.*, 714 A.2d 1159 (Pa. Cmwlth. 1998). The Szabos contend that PennDOT's argument is based upon two faulty premises. The first is that the issues raised are related to the declaration of taking and filing which condemned Parcel 5, and the second is that the Parcel 5 condemnation plan provided proper notice of the condemnation for Parcel 1 and 9. The Szabos explain that the declaration of taking filed on January 10, 2013, never stated or implied that Parcels 1 and 9 were related to the *de jure* condemnation action. Thus, their issue of ownership is not related to the Parcel 5 declaration of taking.

Second, the Szabos assert the revised acquisition plan did not provide constructive notice that PennDOT condemned Parcels 1 and 9. "[L]imitation on owner's right to claim damages in condemnation cannot begin to run until after the owner has had notice, actual or constructive, that his property has been condemned." *Strong Appeal*, 161 A.2d 380, 384 (Pa. 1960). Further, the Szabos emphasize that the state and federal constitutions

protect property rights.[9]   They equate this case with *Strong Appeal* and *Pagni v. Commonwealth*, 116 A.2d 294 (Pa. Super. 1955), where statutes of limitations were deemed inapplicable due to improper notice.

In *Strong Appeal*, the Commonwealth approved a highway expansion plan in 1924, but did not act upon the plan until 1950.  Under then-existing law, Section 61 allowed the Commissioner of Highways to divert a "dangerous" or "inconvenient" road with a plan approved by the governor and filed with the Department of Highways in Harrisburg.  36 P.S. § 61.  The Commonwealth argued that the six-year statute of limitations barred the petition for damages, and the condemnees countered that they did not have adequate notice of the taking, which was filed in Harrisburg.  Noting that Article 1, Section 10 of our Constitution provides that just compensation must be secured under authority of law for the public taking of property, this Court held that a limitation upon an owner's right to claim damages in condemnation cannot begin to run until he has had notice, actual or constructive, that his property has been condemned.  This Court explained "[w]e are of the opinion that the constitutional requirements of just compensation outweigh the Statute of Limitations in this type of case and require actual notice such as entry on the land or the giving of a bond to the landowner." *Strong Appeal*, 161 A.2d at 383.  Further, "'[t]he fundamental requirement of due process of law is the opportunity to be heard. . . [which]

---

[9] The Fifth Amendment to the United States Constitution provides, in pertinent part:

> No person shall be . . . deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

U.S. CONST. amend. V.

Article 1, Section 10 of the Pennsylvania Constitution provides, in pertinent part:

> [N]or shall private property be taken or applied to public use, without authority of law and without just compensation being first made or secured.

PA. CONST. art. 1, § 10.

has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest.'" *Id.* (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

In *Pagni*, the Commonwealth provided notice and recorded plans in 1942 for the possibility of future road expansion. However, it did not act upon those plans until 1948, by which time the six-year statute of limitations to challenge the taking had run. The Commonwealth argued that resulting challenges were waived. The Superior Court held otherwise, noting that "[s]tatutes concerning eminent domain are to be strictly construed," and "[i]t is a fundamental provision of both our state and federal constitutions that no person shall be deprived of property except by the law of the land or due process of law. Without due process of law the right to property cannot be said to exist." *Id.* at 295-96 (quoting *Hess v. Westerwick*, 76 A.2d 745, 748 (Pa. 1950)). The Superior Court stated that although "the Commonwealth took no action and made no statements which would deceive appellees [the property owners], [t]he deception resulted from its failure to act, and the Commonwealth cannot now take advantage of the statutory bar." *Pagni*, 116 A.2d at 296. Noting that the underlying policy behind statutes of limitations is to prohibit unreasonable delay, the court explained, "the Appellees' inaction could not have been unreasonable when they had no knowledge that they had any right which was to be enforced." *Id.* at 297. Accordingly, the Superior Court held that the claim was not barred.

The Szabos, assert that here, as in *Strong Appeal* and *Pagni*, the Commonwealth agency did not adequately provide notice of the taking. As a result, their petition for an evidentiary hearing should not have been denied for failure to raise it within the thirty-day timeframe for filing of preliminary objections.

We find this argument compelling given the fundamental protections of a person's property enumerated in our Constitution. Article 1, Section 1 includes "[a]cquiring,

possessing and protecting property" among the inherent rights of mankind, and Article 1 Section 10, dictates that "private property [shall not] be taken or applied to public use without authority of law and without just compensation being first made or secured." Pa. Const. Art. 1 §§ 1, 10. These tenets have been codified by the General Assembly, which directs that "provisions conferring the power of eminent domain" are to be strictly construed under the rules of statutory interpretation. 1 Pa.C.S. § 1928(b)(4). The Eminent Domain Code must be applied in concert with these principles.

Section 305 states that written notice shall be given to the condemnee within thirty days of the filing of a declaration of taking. 26 Pa.C.S. § 305. Notice shall include "in the case of a partial taking, a plot plan showing the condemnee's entire property and the area taken." 26 Pa.C.S. § 305(9). The Szabos state, and we agree, that PennDOT did not satisfy this requirement when it served a plot plan informing them of the section of property taken from Parcel 5, but not Parcels 1 and 9. The plans provided to the Szabos did not show which portions of Parcels 1 and 9 were to be condemned, and did not identify that land as owned by the Szabos.[10] As the *Pagni* court explained, "where, as here, the party (Commonwealth) setting up the limitation has been solely responsible for the delay it will be prevented from taking this advantage." *Pagni*, 116 A.2d at 296. "Ordinarily in this type of case the person deceived has been led into a sense of security . . . by actions or statements of the party setting up the statute." *Id.* Given the extensive period of time in which the parties were negotiating for purchase, and the language of Section 305

---

[10] The dissent questions whether PennDOT "was required to give Szabos notice of the condemnation of an adjacent property owner's parcel." Dissenting Op. at 3. However, as Justice Wecht notes, the statutory provisions do not contain "a clear account of how to proceed under these circumstances." Concurring Op. at 7. Therefore, while it may be unclear whether it was the Szabos or PennDOT who bore the burden to correctly identify the property lines on the initial plot plan, Section 305 does not require the condemned property owner to file preliminary objections to inaccuracies on a plot plan having no relation to the taking. As the Szabos had no objection to the condemned portion of Parcel 5 on the plot plan, no preliminary objections were filed at that juncture.

providing that condemnees' entire property must be shown to them with the condemned portions outlined, we conclude that just such an event occurred in this case.

Further, PennDOT's reliance on *West Whiteland* is misplaced. Significantly, in that case, PennDOT correctly identified the owner of the condemned property in the property plans and plat it provided in accordance with then-Section 405. *West Whiteland*, 690 A.2d at 1267. This effectively placed the condemnee on notice of his property interests which were impacted by the proposed taking. Four years later, the condemnee attempted to attach un-condemned property to the existing taking via the unity of purpose doctrine as provided in then-Section 605. The condemnee, although cognizant of both the taking and its property interests at stake, failed to challenge unity of purpose in timely preliminary objections. Under those circumstances, the Commonwealth Court held that the condemnee was required to file preliminary objections to the size of the property taken, demonstrating that un-condemned property should nonetheless be included. Accordingly, there, the court limited the evidence to the property plan and property plat filed by PennDOT and served on the condemnee. *West Whiteland*, 690 A.2d at 1271.

Here, PennDOT bore the burden of accurately notifying the owners of land subject to the taking so that they could protect their interests and secure just compensation.[11] Although harmless procedural irregularities "will not set aside a condemnation decision," *Norberry Condominium Association v. PennDOT*, 805 A.2d 59 67 (Pa. Cmwlth. 2002), the procedural defect here went to the "heart of a declaration of taking." *West Whiteland*, 690 A.2d at 1269. By inadequately identifying the extent or effect of the taking, PennDOT

---

[11] The dissent attempts to transfer this burden to the condemnees by noting, "[i]n property boundary disputes outside eminent domain and condemnation proceedings, this Court and others have long held owners of land are presumed to know what they own." Dissenting Op. at 1 (citations omitted). As this case squarely involves condemnation proceedings pursuant to the Eminent Domain Code, such a presumption is inapplicable. Further, even if the Szabos had recognized PennDOT misidentified the owners of Parcels 1 and 9, there was no indication there was a taking from either of those parcels.

misled the Szabos and denied them an opportunity to secure just compensation. To deny them the opportunity for a hearing would place the burden of identifying condemned property squarely on the shoulders of private landowners and would contradict basic property rights ingrained in our Constitution.

We affirm the decision of the Commonwealth Court and remand this matter so that the trial court can hold an evidentiary hearing to determine the property interests affected by the taking, and the board of viewers can determine the proper compensation for that property.

Chief Justice Saylor and Justice Baer join the Opinion Announcing Judgment of the Court.

Justice Wecht files a concurring opinion in which Justice Todd joins.

Justice Dougherty files a dissenting opinion in which Justice Donohue joins.