# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Proceeding in Rem :
Re: Condemnation of 694 Square :
Feet of Temporary Construction :
Easement Through Realty Situate :
at 113 Dekalb Street and 111 Dekalb :
Street, Bridgeport Borough, :
Montgomery County, PA :
:
Montgomery County Transportation :
Authority :
:
v. :  No. 1837 C.D. 2019
:
106 Dekalb, Inc., :
               Appellant :
:
Proceeding in Rem :
RE: Condemnation of 2,222 Square :
Feet of Permanent Trial Easement, :
3,585 Square Feet of Fee Simple :
Interest (Right-Of-Way), and 2,570 :
Square Feet of Temporary Construction :
Easement Through Realty Situate at :
114 Dekalb Street, 110 Dekalb Street, :
108 Dekalb Street, 106 Dekalb Street, :
100-102 Dekalb Street, 92 Dekalb :
Street, 100 Dekalb Street, Dekalb Street, :
311 West Second Street and West :
Third Street (as Stated on the Deed) :
Also Known as 300 Falls View Drive :
(as Stated in Montgomery County :
Board of Assessment Records) (Map :
Numbers 60, 61, 62, 63, 64, 66, 74, 75, :
76, 77 and 78, Collectively), Bridgeport :
Borough, Montgomery County, PA :
:

Montgomery County Transportation : 
Authority :
:
            v. :     No. 1838 C.D. 2019
:     Argued: March 18, 2021
106 Dekalb, Inc., :
            Appellant :


BEFORE:   HONORABLE MARY HANNAH LEAVITT, Judge
             HONORABLE CHRISTINE FIZZANO CANNON, Judge
             HONORABLE J. ANDREW CROMPTON, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CROMPTON           FILED: April 20, 2021


      106 Dekalb, Inc. (Owner) appeals the Orders of the Court of Common Pleas of Montgomery County (trial court), dated November 22, 2019, overruling and dismissing Owner's Preliminary Objections (Objections) to the Declarations of Taking filed by the Montgomery County Transportation Authority (MCTA). In the Declarations of Taking, filed on June 11, 2019, the MCTA condemned certain properties belonging to Owner for the purpose of improving the transportation system in Montgomery County. In overruling Owner's Objections, the trial court found that Owner did not meet its burden to demonstrate that the MCTA abused its discretion in condemning the property, and before this Court, the MCTA contends that the trial court's findings were correct. Upon consideration, we affirm the Orders of the trial court.

# I.    Background

The subject of this appeal, the MCTA's Montgomery County Chester Valley Trail Extension Project, is a 3.8-mile extension of the Chester Valley Trail, a commuter trail for biking, jogging, and walking. Reproduced Record (R.R.) at 203a, 627a. This project would link the existing 14.5-mile portion of the Chester Valley Trail, which currently runs from Exton to King of Prussia, to the Schuylkill River Trail in Norristown. *Id.* at 203a. A portion of the commuter trail will run through Bridgeport Borough, including Owner's property. *Id.* The Montgomery County Board of Commissioners and the MCTA determined that the extension project would be a vital improvement to the transportation system within Montgomery County. *Id.*

To accomplish the extension project, on June 11, 2019, the MCTA filed two Declarations of Taking with the trial court, condemning portions of Owner's properties to secure a permanent trail easement, fee simple interest (right-of-way), and temporary construction easements. *See id.* at 6a-14a. The MCTA attached a plot plan and descriptions of the condemned properties to the Declarations of Taking at Exhibit "A." *Id.* at 15a-20a. In its Declarations of Taking, the MCTA described Owner's condemned properties, stating:

> [Owner's] properties have been condemned by filing a Declaration of Taking under the caption as set forth in 1. above. The condemned properties are located at 114 DeKalb Street, 110 DeKalb Street, 108 DeKalb Street, 106 DeKalb Street, 100-102 DeKalb Street, 92 DeKalb Street, 100 DeKalb Street, DeKalb Street, 311 W. Second Street and West Third Street (as stated on the Deed) also known as 300 Falls View Drive (as stated in Montgomery County Board of Assessment records), Bridgeport Borough, Montgomery County, Pennsylvania, and are further identified by the Plot Plan attached as Exhibit "A."
>
> The parcels identified in the Exhibit "A" Plot Plan as Map Number 66 (92 DeKalb St.), Map Number 74 (100 DeKalb St.), Map Number 75

3

(100 DeKalb St.), Map Number 76 (DeKalb St.), Map Number 77 (311 W. Second St.) and Map Number 78 (W. Third St.) are included in this Declaration of Taking because of the unity of ownership/use/contiguity of the parcels, and are not subject to any actual condemnation of lands hereto.[1]

Notice of Filing of Declaration of Taking, 06/11/2019, at No. 8; R.R. at 10a. In its second Declaration of Taking filed on June 11, 2019, the MCTA described condemnation of additional properties belonging to Owner:

[Owner's] properties have been condemned by filing a Declaration of Taking under the caption as set forth in 1. above. The condemned properties are located at 113 DeKalb Street and 111 DeKalb Street, Bridgeport Borough, Montgomery County, Pennsylvania, and are further identified by the Plot Plan attached as Exhibit "A."

Notice of Filing of Declaration of Taking, 06/11/2019, at No. 8; R.R. at 33a.

Owner filed its Objections to the Declarations of Taking on June 19, 2019, pursuant to Section 306 of the Eminent Domain Code, 26 Pa.C.S. §306.[2] In

---

[1] Upon consideration of the inclusion of certain properties in the Declaration of Taking for the exclusive purpose of "unity of ownership/use/contiguity," the remaining condemned parcels are as follows: 102 Dekalb Street, 106 Dekalb Street, 108 Dekalb Street, and 110 Dekalb Street (Map Numbers 60-64). *See* R.R. at 33a. In its brief, Owner explains that 102 Dekalb Street is a parking lot used by apartment tenants and commercial businesses in the area. Owner's Br. at 6 n.2. Owner further provides that 106 Dekalb Street, 108 Dekalb Street, and 110 Dekalb Street, collectively contain 2 buildings, which consist of approximately 20,000 square feet. *Id.*

[2] Section 306 of the Eminent Domain Code states:

(a) Filing and exclusive method of challenging certain matters.
    (1) Within 30 days after being served with notice of condemnation, the condemnee may file preliminary objections to the declaration of taking.
    (2) The court upon cause shown may extend the time for filing preliminary objections.
    (3) Preliminary objections shall be limited to and shall be the exclusive method of challenging:

its Objections, Owner asserted that the MCTA lacked the authority to condemn the properties and that the MCTA's Notice of Condemnation and Declarations of Taking were deficient for failing "to adequately or properly advise [Owner] what property of [Owner] is being taken, or attach any plans which would enable [Owner] to investigate and/or object to the condemnation." Objections at No. 2; Original Record (O.R.) at 256. More specifically, Owner alleged that the MCTA failed to include the taking of frontage and front entrances at some of the properties as well

---

     (i) The power or right of the condemnor to appropriate the condemned property unless it has been previously adjudicated.
     (ii) The sufficiency of the security.
     (iii) The declaration of taking.
     (iv) Any other procedure followed by the condemnor.
(b) Waiver.--Failure to raise by preliminary objections the issues listed in subsection (a) shall constitute a waiver. Issues of compensation may not be raised by preliminary objections.
(c) Grounds to be stated.--Preliminary objections shall state specifically the grounds relied on.
(d) When raised.--All preliminary objections shall be raised at one time and in one pleading. They may be inconsistent.
(e) Service.--The condemnee shall serve a copy of the preliminary objections on the condemnor within 72 hours after filing them.
(f) Disposition.
     (1) The court shall determine promptly all preliminary objections and make preliminary and final orders and decrees as justice shall require, including the revesting of title.
     (2) If an issue of fact is raised, the court shall take evidence by depositions or otherwise.
     (3) The court may allow amendment or direct the filing of a more specific declaration of taking.
(g) Costs and expenses.
     (1) If preliminary objections which have the effect of terminating the condemnation are sustained, the condemnor shall reimburse the condemnee for reasonable appraisal, attorney and engineering fees and other costs and expenses actually incurred because of the condemnation proceedings.
     (2) The court shall assess costs and expenses under this subsection.

26 Pa.C.S. §306.

as the taking of water, sewer, and utilities at others. Objections at No. 3. Further, Owner argued that some condemned properties were not indicated on plans attached to the Declarations of Taking and that such documents did not utilize proper parcel designations. *Id.* Finally, Owner contended that, even assuming the MCTA has the power to condemn these properties, the MCTA abused its discretion, acting arbitrarily and capriciously. *Id.* at No. 4.

In its Objections, Owner described the MCTA's proposed extension project as "a dangerous trap" that "ignored the safety" of Owner's tenants, citizens using walkways outside of Owner's properties, motorists using streets alongside Owner's properties, and the general public. *Id.* As a result, in Owner's view, the extension project was not "designed in accordance with traffic manuals or good engineering practices governing interactions between paths and roadways." *Id.* Owner presented these details within its Objections as evidence of an abuse of discretion as well as bad faith actions on the part of the MCTA. *See generally* Objections.

The trial court held hearings on Owner's Objections on October 8 and 29, 2019. On November 22, 2019, the trial court issued Orders overruling and dismissing Owner's Objections. In its opinion dated December 18, 2019, the trial court held that Owner "did not meet its **heavy burden** to demonstrate that [the] MCTA abused its discretion in its route selection and condemnation of the properties." Trial Ct. Op., 12/18/2019, at 6 (emphasis in original). Further, the trial court found that the MCTA "sufficiently set forth a description of the properties that had been condemned," as follows:

(1) The name and address of the condemnor.
(2) A specific reference to the statute and section under which the condemnation is authorized.

6

(3) A specific reference to the action, whether by ordinance, resolution or otherwise, by which the declaration of taking was authorized, including the date when the action was taken and the place where the record may be examined.

(4) A brief description of the purpose of the condemnation.

(5) A description of the property condemned, sufficient for identification, specifying the municipal corporation and the county or counties where the property taken is located, a reference to the place of recording in the office of the recorder of deeds of plans showing the property condemned or a statement that plans showing the property condemned are on the same day being lodged for record or filed in the office of the recorder of deeds in the county in accordance with section 304 (relating to recording notice of condemnation).

(6) A statement of the nature of the title acquired, if any.

(7) A statement specifying where a plan showing the condemned property may be inspected in the county in which the property taken is located.

(8) A statement of how just compensation has been made or secured.

Trial Ct. Op., 12/18/2019, at 3-4 (quoting Section 302 of the Eminent Domain Code, 26 Pa.C.S. §302). The trial court concluded that the MCTA satisfied these elements. *See id.* Thus, as the trial court found that the MCTA acted appropriately and within its authority,[3] the trial court overruled and dismissed Owner's Objections.[4] Owner now appeals to this Court.[5]

---

[3] The power of condemnation is vested in municipal bodies pursuant to the Municipality Authorities Act, 53 Pa.C.S. §5607(a)(3), (d)(15).

[4] In its opinion, the trial court noted that while Owner filed Objections related to "fraud or bad faith" on the part of the MCTA, Owner only presented evidence at trial focused on the MCTA's alleged failure to properly identify the condemned properties and the MCTA's alleged abuse of discretion in its route selection for the extension project. Trial Ct. Op., 12/18/2019, at 2. Before this Court, Owner similarly raises only these two discrete issues regarding the MCTA's actions. Therefore, our discussion is limited to those issues presented before this Court.

[5] In an appeal from an eminent domain proceeding, this Court reviews the trial court's record to "determine whether the lower court abused its discretion or committed an error of law or whether the findings of fact were supported by substantial evidence." *Szabo v. Dep't of Transp.*, 202 A.3d 52, 58 (Pa. 2019). Where a trial court has either sustained or overruled preliminary

## II.     Discussion

### A. The MCTA's Identification of Condemned Properties

Owner asserts that the trial court erred in overruling its Objections because the credible evidence of record shows that the Notice of Condemnation and Declarations of Taking filed by the MCTA failed to properly identify and describe the property being condemned as required by the Eminent Domain Code. The MCTA contends that the documents contained in the record clearly demonstrate a description of the condemned properties that is sufficient for their identification. Further, the MCTA directs this Court's attention to the plot plan included in its Exhibit "A" as appended to the Declarations of Taking.

Section 302 of the Eminent Domain Code recognizes eight criteria that must be met by a condemnor when issuing a Declaration of Taking for the purpose of properly identifying the subject condemned properties. *See* Trial Ct. Op., 12/18/2019, at 3-4; 26 Pa.C.S. §302. As applied to the present case, the MCTA argues that all Section 302 criteria were met and that the trial court did not err in finding as such. In reviewing the Declarations of Taking, it is clear to this Court that the following criteria were met: listing of the name and address of the condemnor; a specific reference to the statute and section under which the condemnation is authorized; a specific reference to the resolution by which the Declarations of Taking were authorized; the purpose of the condemnation; statement of title acquisition; the county site for inspection of the plan showing the condemned property; and a

---

objections to a declaration of taking, as in the present case, the appellate court's scope of review is limited to determining whether the trial court abused its discretion or committed an error of law. *In re Condemnation by City of Coatesville of Certain Props.*, 822 A.2d 846 (Pa. Cmwlth. 2003).

statement regarding just compensation.[6] R.R. at 6a-7a, 29a-30a. However, the main subject of Owner's appeal, whether the Declarations of Taking contained a "description of the property condemned [] sufficient for identification" warrants a closer review by this Court.

In support of its appeal on the issue of identification and compliance with Section 302 of the Eminent Domain Code, Owner asserts that the trial court erred in finding that the MCTA issued proper Declarations of Taking because the documents did not include plot plans and a property plat that contained metes and bounds. Owners' Br. at 22. Further, Owner argues that the Declarations of Taking did not contain frontage calculations regarding the distance back from the street being condemned or provide a calculation of the area of the taking. *Id.* Owner also cites difficulty in differentiating which parcels were the subject of the condemnation, particularly given that some properties included in the Declarations of Taking were not owned by Owner. *Id.*

Owner relies on our Supreme Court's recent decision in *Szabo v. Department of Transportation*, 202 A.3d 52 (Pa. 2019), in its assertion that the MCTA's Declarations of Taking failed to comply with the Eminent Domain Code due to insufficient identification of the condemned properties. In *Szabo*, the plans incorrectly identified property owned by the Szabos, the property owners, as owned by other parties. Due to this error, the Szabos failed to timely file preliminary objections challenging the condemnation. However, the dispute in *Szabo* differs from the situation presently before this Court.

_____

[6] On appeal, Owner does not challenge the issue of just compensation. The record indicates that the MCTA assessed just compensation to be owed to Owner in the amount of $406,500, following condemnation. Trial Ct. Exs. to Test. at 155.

9

Here, the MCTA identified the condemned properties in two separate Declarations of Taking, each filed on June 11, 2019. R.R. at 5a-27a; 28a-45a. The first of these Declarations identified properties to be condemned on the west side of Dekalb Avenue, while the second identified properties to be condemned on the east side of Dekalb Avenue. *Id.* In the first of these Declarations, the MCTA acknowledged that additional properties were included for the sake of unity of "ownership/use/contiguity" but made clear that these properties were not actually condemned. *Id.* Owner argues before this Court that the inclusion of additional properties provides inadequate identification like that presented in *Szabo*. However, in *Szabo*, the condemnor committed an error by not properly informing owners that their property was being condemned, mistakenly attributing ownership of these properties to another entity. While Owner in the present case argues that the inclusion of additional properties creates confusion, this inclusion does not amount to an inadequate identification of the extent or effect of the taking that would mislead or deprive Owner.

Owner cites the testimony of Owner's president and prinicpal, Mr. Richard Schildt, as evidence that the Declarations of Taking did not properly identify the condemned property. Before the trial court, Mr. Schildt, a mechanical engineer, was questioned regarding the contents of the Declarations of Taking:

> Q[:] . . . were you able to decipher from these plans what was being taken?
>
> [Mr. Schildt:] No. As you can see they are very hard to read.

Hr'g Tr., 10/08/2019, at 49. However, on cross-examination, Mr. Schildt was presented with Exhibit "A" which accompanies the Declarations of Taking and questioned about the provided information:

Q[:] If you quickly review that page, permanent trail easement description Exhibit A, in your experience as a building owner and as a mechanical engineer, does that page present metes and bounds?

[Mr. Schildt:] If I were [sic] a land surveyor, I could interpret that. As a mechanical engineer, I'm used to seeing dimensions on a drawing with lines and arrows from one end to the other. To take this information and relate it back to that drawing that I can't even see would be very difficult, even now. And even if I had a large print, I wouldn't be able to decipher and relate that back to the blueprint.

Q[:] But does this page contain metes and bounds?

[Mr. Schildt:] If you say so. I mean, as a mechanical engineer, it looks as if it's a land surveyor document not a mechanical engineer document.

Hr'g Tr., 10/08/2019, at 94-95. While Mr. Schildt has professional training in the area of mechanical engineering, his testimony before the trial court was not offered as expert testimony. Further, Mr. Schildt admittedly acknowledged that he did not have experience in the area of land surveying and was attempting to interpret the provided information by relating it to his knowledge of the mechanical engineering field.

Owner alleges that the trial court erred in finding that the MCTA met the condemned property identification requirements of the Eminent Domain Code, specifically asserting that metes and bounds and measurements associated with the condemnation were not provided. However, the evidence of record indicates that this information was provided in Exhibit "A," which was appended to both Declarations of Taking. Further, in its December 18, 2019 opinion, the trial court explained that "[t]he description for each type of taking (permanent trail easement, fee simple interest, or temporary construction easement) included metes and bounds. Furthermore, the schematic plan included a legend that indicated the properties that

11

had been condemned." Trial Ct. Op., 12/18/2019, at 4. While Mr. Schildt testified to the fact that the information was not presented in a way in which he was professionally familiar or capable of professionally interpreting, this does not mean that the MCTA failed to meet the identification requirements of the Eminent Domain Code. Mr. Schildt was not offered as an expert in this case, and therefore, was not qualified to draw conclusions about the proper interpretation of the MCTA's provided plans.

This Court has recognized that, "[t]he plot plans and property plat filed with the declaration of taking and served upon a condemnee are part of and indeed, the heart of a declaration of taking. It is only by reference to such plans that one can determine what property is the subject of condemnation and, in the case of a partial taking, what part of the property has been taken." *West Whiteland Assocs. v. Dep't of Transp.*, 690 A.2d 1266, 1269 (Pa. Cmwlth. 1997) (citing *Milford Traumbaursville Area Sewer Auth. v. Approximately .753 Acres of Land*, 358 A.2d 450 (Pa. Cmwlth. 1976)). In the present case, the trial court found that the MCTA sufficiently set forth a description of the properties to be condemned and accordingly, met the identification requirements contained within Section 302 of the Eminent Domain Code. Based upon the evidence of record, we determine that the trial court did not commit an error of law in finding that the Declarations of Taking issued by the MCTA complied with the Eminent Domain Code and overruling Owner's Objections related to this issue.

**B. The MCTA's Choice of Extension Project Route**

Owner also argues that even if the MCTA has the authority to condemn the properties and has acted in compliance with the Eminent Domain Code, the MCTA's actions were still inappropriate as it committed an abuse of discretion in

12

condemning Owner's properties. Owner asserts that the trial court erred in finding that the MCTA did not abuse its discretion in selecting the route for the extension project. In Owner's view, the MCTA did not properly consider safety for individuals using the commuter trail and for the greater community.

The MCTA is receiving federal funding for the extension project. Trial Ct. Op., 12/18/2019, at 5. As a result, the Pennsylvania Department of Transportation (PennDOT) has oversight authority for the grant of that money through the Federal Highway Administration. *Id.* Due to the use of federal funding, the MCTA is subject to the statutory obligations created by the National Environmental Policy Act (NEPA).[7] *See id.* Under NEPA, any federal or federally funded construction project must consider the proposed project's environmental impact. *See generally* 42 U.S.C. §§4321-4370. In the instant case, the MCTA asserts that the chosen route for the extension project satisfies these requirements, allowing for support through federal funding. Owner asserts that in considering the route that would most likely secure federal funding, the MCTA committed an abuse of discretion.

A court's authority to review the exercise of the power of eminent domain is limited and is governed by judicial respect for the doctrine of the separation of powers of government. *In re Condemnation of Real Estate by Borough of Ashland*, 851 A.2d 992, 996 (Pa. Cmwlth. 2004). Our Supreme Court explained this principle in *Weber v. Philadelphia*:

> First, it is to be presumed that municipal officers properly act for the public good. Second, courts will not sit in review of municipal actions involving discretion, in the absence of proof of fraud, collusion, bad faith or arbitrary action equating an abuse of discretion. Third, on judicial review, courts, absent proof of fraud, collusion, bad faith or

---

[7] 42 U.S.C. §§4321-4370.

abuse of power, do not inquire into the Wisdom [sic] of municipal actions and Judicial discretion should not be substituted for Administrative discretion.

262 A.2d 297, 299 (Pa. 1970) (citations omitted).

As stated by the trial court in its opinion, a condemnee alleging fraud, collusion, bad faith or an abuse of power or discretion has a "heavy" burden and must overcome the presumption that the condemnor has acted properly. Trial Ct. Op., 12/18/2019, at 4 (citing *In re Condemnation of Real Estate by Borough of Ashland*, 851 A.2d at 996); *see In re Pa. Tpk. Comm'n*, 84 A.3d 768, 776 (Pa. Cmwlth. 2014) ("The burden of proving that a condemnor has abused its discretion in making a decision to condemn property is on the objector or condemnee and the burden is a heavy one.") (citation omitted). Further, this Court gives deference to the judgment of municipal officials in the exercise of their discretion in eminent domain matters, and we will disturb their decisions only where the condemnee can offer proof of fraud, collusion, bad faith, or an abuse of power or discretion. *In re Condemnation of Real Estate by Borough of Ashland*, 851 A.2d at 997.

Owner characterizes the MCTA's condemnation decision as "both excessive and arbitrary." Owner's Br. at 26. More specifically, in Owner's Objections, Owner challenged the placement of the commuter trail's route through Bridgeport Borough as improper, stating:

> [The MCTA] chose a bike path route requiring the taking of two of [Owner's] large buildings and a parking lot, plus limiting access and use of at least two additional buildings, instead of selecting a more reasonable and safer route along mostly existing rights-of-way which would not have required taking of [Owner's] property.

Preliminary Objections at No. 4(A); O.R. at 91. However, the trial court found that the MCTA considered many factors when selecting the extension project route,

14

including route safety and the time required to travel the route. Trial Ct. Op., 12/18/2019, at 4-5. While the trial court also noted that the MCTA considered funding requirements in its condemnation determination, the trial court found that the MCTA did not abuse its discretion in route selection. *Id.* at 6. Further, the present route selection for the extension project was not the only route considered and many alternatives existed that did not meet safety requirements, were not sufficiently "off-road," or did not provide the type of lower travel time associated with commuter routes. *Id.* Therefore, the trial court concluded that Owner did not meet its burden to demonstrate that the MCTA abused its discretion. *Id.*

Before this Court, Owner asserts that the MCTA's route selection was related only to the requirements necessary to obtain federal funding. However, the record indicates otherwise. John Smyth, the project engineer for the extension project, testified that a safety review was conducted and approved by PennDOT. R.R. at 643a. Further, he explained the various alternative routes that were explored by the MCTA:

> Q[:] Now, there are other depicted trail alignments on Exhibit 106-3. If you could speak to the trail alignments, specifically the green, the yellow, and the blue, and address why those trail alignment options were not the final chosen trail alignment.
>
> [Mr. Smyth:] . . . The question was whether or not we could find another way to get from -- to Norristown. So we decided to take a look to the east and came up with the different routes as shown on Exhibit 106-3. We looked at Mill Street and Depot Street. There's actually a green alignment here that's shown.
>
> That green alignment is a secondary trail in the future that could happen, which would be nice to connect to the spine of the Chester Valley Trail. However, in evaluating each of these alternatives, it became clear that they did not meet the project need.

15

We are bound by the project need of this project. It is part of NEPA. That's the National Environmental Policy Act. Our project needs dictate that we need to connect through Bridgeport. And it also says to go over the Norfolk Southern Bridge and the Schuylkill River Bridge. So that was one of the needs that was not met.

That being said, the alignments to the east cross over the railroad at grade. We took into account that this is not a commuter rail line. It's not [Southeastern Pennsylvania Transportation Authority (SEPTA)] that has a set schedule that a commuter on a trail can time his watch to or her watch to and say I know the train is coming at this point. I can accommodate myself accordingly.

This is a freight rail line. The freight rail line does not have a set schedule. Therefore, there's no known time that the train would be crossing and thereby restricting trail users to get across the train tracks.

That was a time that the trail user would, therefore, not know when they would be able to cross the tracks because of the unknown length of the train. Therefore, our thought process was commuters are not going to want to do that. They are going to find the path that gets them to the Schuylkill River Trail or the SEPTA Norristown Station the quickest and of the shortest length, which brought us back to the alignment.

*Id.* at 629a-32a. Therefore, while alternative routes were considered for the extension project, safety and commuter concerns, even those extending beyond NEPA funding, contributed to the MCTA's ultimate selection of the appropriate route for the project and the subsequent condemnation actions that are the subject of this appeal.

While Owner asserts that the trial court erred in overruling its Objections, the trial court heard two days of testimony on the Objections, determined the credibility of witnesses, and considered the exhibits offered as evidence during the hearing. In doing so, the trial court found that Owner did not meet its burden to demonstrate that the MCTA abused its discretion in its route selection and condemnation of the associated properties. The trial court did not commit an error

16

of law in overruling Owner's Objections as this decision was supported by substantial evidence.

### III.    Request to Revest Title in Owner

Owner ultimately asserts before this Court that the trial court committed an error of law by not revesting title of the properties subject to condemnation proceedings in Owner.  Citing 26 Pa.C.S. §306(f)(1),[8] Owner notes that under the Eminent Domain Code, a trial court is empowered to make preliminary orders, final orders, and decrees as justice requires, including revesting title in the manner requested instantly.  In Owner's view, the trial court erred in not sustaining Owner's Objections and providing subsequent relief in the form of revesting title in Owner.

However, this Court has determined that the trial court did not commit an error of law in finding that the MCTA did not violate the condemnation requirements of the Eminent Domain Code or abuse its discretion.  The trial court appropriately found that Owner did not meet its burden to demonstrate either a violation of this kind or an abuse of discretion on the part of the MCTA.  Accordingly, justice did not require a granting of relief to Owner, and as a result, the trial court acted properly by not revesting title for the condemned properties in Owner.  *See* 26 Pa.C.S. §306(f)(1).  Therefore, we determine that the trial court did not err in not revesting title of the condemned properties in Owner.

---

[8] 26 Pa.C.S. §306(f)(1) states:

> (1) The court shall determine promptly all preliminary objections and make preliminary and final orders and decrees as justice shall require, including the revesting of title.

17

## IV.   Conclusion

Discerning no error below, we affirm the Orders of the trial court.

_____
J. ANDREW CROMPTON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Proceeding in Rem                          :
Re: Condemnation of 694 Square      :
Feet of Temporary Construction       :
Easement Through Realty Situate     :
at 113 Dekalb Street and 111 Dekalb  :
Street, Bridgeport Borough,          :
Montgomery County, PA             :
                                          :
Montgomery County Transportation :
Authority                             :
                                          :
                v.                  :          No. 1837 C.D. 2019
                                          :
106 Dekalb, Inc.,                   :
                      Appellant    :

Proceeding in Rem                    :
RE: Condemnation of 2,222 Square  :
Feet of Permanent Trial Easement,  :
3,585 Square Feet of Fee Simple    :
Interest (Right-Of-Way), and 2,570  :
Square Feet of Temporary Construction :
Easement Through Realty Situate at  :
114 Dekalb Street, 110 Dekalb Street, :
108 Dekalb Street, 106 Dekalb Street, :
100-102 Dekalb Street, 92 Dekalb   :
Street, 100 Dekalb Street, Dekalb Street, :
311 West Second Street and West    :
Third Street (as Stated on the Deed)  :
Also Known as 300 Falls View Drive  :
(as Stated in Montgomery County    :
Board of Assessment Records) (Map  :
Numbers 60, 61, 62, 63, 64, 66, 74, 75, :
76, 77 and 78, Collectively), Bridgeport :
Borough, Montgomery County, PA   :
                                          :

Montgomery County Transportation       :
Authority                                   :
                                           :
             v.                   :         No. 1838 C.D. 2019
                                           :
106 Dekalb, Inc.,                   :
                 Appellant     :

# **O R D E R**

**AND NOW**, this 20th day of April 2021, we **AFFIRM** the November 22, 2019 Orders of the Court of Common Pleas of Montgomery County.

_____
J. ANDREW CROMPTON, Judge